*In re* CARLOS JESÚS PÉREZ SANTIAGO, querellado.

Números: O-85-143 Resueltos: 1ro de octubre de 1992
CE-87-354

*Rafael Ortiz Carrión, Procurador General,* y *Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados del querellante; *Hon. Vicente López Pérez, Comisionado Especial; Julio Eduardo Torres,* abogado del querellado; *Carlos Jesús Pérez Santiago, pro se.*

PER CURIAM: Resolvemos dos (2) querellas deontológicas[1] formuladas por el Procurador General contra el

---

[1] "... *Deontología* (etimológicamente es igual a ciencia o tratado de los deberes) estudia los deberes que atañen a una determinada profesión. El nombre fue puesto en boga por Max Simon en su ya clásica obra dedicada a la profesión médica, *Deontologie medicale,* publicada en París en 1845. Siguiendo sus huellas aparecieron una serie de tratados concernientes a otras profesiones. El término, vino a sustituir o a emplearse como sinónimo del de Ética o Moral profesional. En el campo jurídico el pionero fue el belga J. Salsmans con su obra —publicada originariamente en flamenco y traducida por el mismo autor al francés— de *Droit et morale. Deontologie juridique* (19) (París, 1925). En ella 'se encuentran los principios generalas (morales) aplicables y aplicados a las diferentes cuestiones' del Derecho civil belga. En éste su

Lcdo. Carlos J. Pérez Santiago. En la primera (Caso Núm. O-85-143), se le imputaron los cargos siguientes:

### CARGO I

El Lcdo. Carlos J. Pérez Santiago actuó en violación a los cánones 18 y 19 de los de Etica Profesional en su relación abogado–cliente con la Sra. Luz Zereida Pérez, al no informarle sobre el status del caso, no comparecer a vistas y permitir finalmente que el caso fuera desestimado por su falta de diligencia y competencia en la atención del mismo. (Refiérase al caso de *Luz Zereida Pérez Torres Vs. E.L.A.,* Civil Núm. 79-4700 sobre Daños y Perjuicios, radicado en el Tribunal Superior, Sala de Ponce.

### CARGO II

El Lcdo. Carlos J. Pérez Santiago violó los Cánones *18* y *19* de los de Etica Profesional en su relación profesional con los clientes *Sr. Francisco L. Muñiz y Sr. Joaquín García,* al hacer caso omiso de órdenes del Tribunal que le concedían un último plazo para la contestación de unos interrogatorios en el caso en que los representaba. Su actuación permitió que los tres clientes–demandantes perdieran todos sus derechos. Al tener dificultad para conseguir a su tercer cliente–demandante, Sr. Ramón González, para la contestación de los interrogatorios, el abogado querellado optó por no notificar las contestaciones de los dos primeros, que sí habían cumplido con sus requerimientos. De haber contestado los interrogatorios, entonces las sanciones impuestas hubiesen afectado sólo al demandante que había perdido interés en la acción. (Refiérase al caso de *Francisco L. Muñiz, Joaquín García Vázquez y Ramón González Castillo Vs. Frito Lay of P.R. Inc. y la Aseguradora X,* Civil N[ú]m. 80-1300, sobre Incumplimiento de Contrato y Daños, radicado en el Tribunal Superior, Sala de San Juan.) (Énfasis en el original.) Caso Núm. O-85-143, Informe del Comisionado Especial, págs. 1–2.

Contestada la querella, designamos Comisionado Especial al ex Juez Superior Vicente López Pérez. Previo los trámites procesales de rigor, celebró una vista evidenciaria en la que estuvieron presentes la Procuradora General

---

mérito principal y su originalidad." C. Álvarez Arias, *Ética Profesional del Jurista,* Año III (Núm. 11) Rev. Der. Pur., 352 (1964).

Auxiliar, Lcda. Eliadís Orsini Zayas, y sus testigos, Luz Zereida Pérez y Francisco Muñiz, este último también testigo del querellado. El querellado Pérez Santiago estuvo representado por el Lcdo. José A. Cangiano y a su favor, como testigo de reputación, declaró el Lcdo. Víctor Vargas Negrón, ex Juez Superior de Ponce. A base de la prueba desfilada, el Comisionado Especial certificó las determinaciones de hecho siguientes:

### CARGO I

1. El querellado, Lcdo[.] Carlos J. Pérez Santiago fue admitido al ejercicio de la abogacía hace 17 años. Durante ese tiempo ha practicado la profesión en la ciudad de Ponce. Se dedica a la práctica de lo criminal y lo civil, pero primordialmente a la criminal. Su práctica ha sido intensa mayormente en el Tribunal de Distrito, goza de buena reputación en la comunidad ponceña y ésta es la primera vez que se le radica una querella en su contra, ante esta Honorable Superioridad.

2. El *17 de mayo de 1977* fue asesinado en la Cárcel de Distrito de Ponce, el confinado, William Moreno. Para esa fecha su esposa, Luz Zereida Pérez Torres residía en Chicago junto a su mamá y sus dos hijos menores de edad. Por la portada del "Vocero" que una vecina del barrio le envió, Luz Zereida se enteró del suceso, regresó a Puerto Rico y como *a las dos semanas* visitó al querellado en busca de ayuda legal.

3. El querellado fue contratado verbalmente por Luz Zereida para radicar una demanda de Daños y Perjuicios contra el Estado Libre Asociado de Puerto Rico. Le entregó al querellado un cheque por la cantidad de $51.00 y más tarde otro de $75.00 para "Sellos de Rentas Internas".

4. El querellado requirió, además, de Luz Zereida la obtención de varios documentos tales como, Certificado de Defunción, de Matrimonio y de Nacimiento de los dos hijos antes mencionados.

5. El querellado orientó a la reclamante sobre la extinción del periodo estatutario de los 90 días para la notificación al Estado Libre Asociado de Puerto Rico sobre la intención de demandar, pero le indicó que le ayudaría tanto a ella como a sus hijos en alguna otra forma. Se refirió a algún tipo de ayuda gubernamental. *El querellado no hizo gestión alguna en ese sentido.*

6. La reclamante obtuvo los documentos requeridos por el

querellado pero éstos, *se desaparecieron de la oficina del querellado* y la reclamente quien residía en las Parcelas Jauco de Santa Isabel tuvo que gestionar la obtención de los documentos por segunda vez.

7. Luz Zereida, de cuarto grado de escolaridad[, e]stuvo casi un año "yendo y viniendo" a la oficina del querellado hasta que éste finalmente radicó la demanda el 4 de junio de 1979. Es preciso apuntar que el querellado estuvo hospitalizado desde el mes de abril hasta fines de junio de 1978 padeciendo de una condición hepática.

8. Se alegó en el párrafo cuarto de la demanda, "que en los momentos de los hechos la viuda se encontraba en los Estados Unidos con sus dos hijos trabajando para poder alimentarlos, conociendo de los hechos muchos meses después, iniciando gestiones para poder trasladarse a Puerto Rico." Con la radicación de la demanda terminaron las gestiones del querellado ante el Tribunal.

9. No fue hasta el 17 de septiembre de 1979, o sea más de tres meses después de haberse radicado la demanda que el Estado Libre Asociado de Puerto Rico radicó su Moción de Desestimación apoyado en la ausencia de notificación, (Leyes 104 y 121 de junio de 1966, art. 2a, 32 LPRA, Sec[. 3]077 A); y en la expiración del término prescriptivo.

10. *La Moción de Desestimación fue notificada al querellado al igual que el señalamiento de la misma. El querellado no compareció a la vista de la discusión de la referida moción. Se desestimó la demanda.*

11. Luz Zereida, por problemas personales, regresó a Chicago dos meses después de radicarse la demanda. Regresó a Puerto Rico a los tres meses aproximadamente. *Visitó la oficina del querellado en numerosas ocasiones.* Nada se le informaba, a veces hablaba con la secretaria, *quien tenía instrucciones de no darle información a los clientes.* Tras numerosos intentos Luz Zereida pudo hablar con el querellado qui[e]n le indicó que volviera al otro día para informarle. *Así estuvo varios días viajando de Santa Isabel a Ponce hasta que finalmente el querellado le informó de la desestimación de la demanda. El querellado se negó a mostrarle los documentos y a entregarle el expediente del caso.* Accedió a anotarle el número del caso a la demandante y ésta acudió a la Secretaría del Tribunal de Ponce y allí obtuvo copia del documento con el cual acudió al Colegio de Abogados donde se querelló. Y se inició la investigación que origina estos procedimientos.

## CARGO II

1. En el Tribunal Superior, Sala de Ponce, Francisco L. Muñiz Figueroa, Joaquín García Vázquez y Ramón González Castillo como demandantes radicaron una demanda civil contra *Frito Lay of Puerto Rico, Inc., y la Aseguradora X*, Civil Núm. 80–1300, sobre Incumplimiento de Contrato y Daños. El querellado compareció como abogado de los demandantes.

2. Por el fundamento de que las oficinas centrales de Frito Lay of Puerto Rico están localizadas en Guaynabo, Puerto Rico, dicho co–demandado solicitó el traslado de la causa para el Tribunal Superior, Sala de Bayamón. El querellado en representación de sus clientes, se opuso. Dicha Moción se señaló para el 31 de enero de 1980. *El querellado, a pesar de que fue notificado del señalamiento no compareció.* Por los argumentos expresados por el abogado de Frito Lay, el Tribunal decretó el traslado.

3. Con fecha 11 de marzo de 1980 la demandada sometió a los demandantes un pliego de interrogatorios, requerimiento para la producción de documentos y requerimientos de admisiones.

4. *No se objetaron los interrogatorios, no se contestaron los mismos, ni se pidió prórroga alguna a tales efectos dentro del término estatutario.*

5. Con fecha 23 de abril de 1980, el Lcdo. Pedro J. Santa Sánchez, abogado del co–demandado, Frito Lay, se dirigió por carta al querellado exponiéndole la situación, requiriendo las contestaciones y documentos solicitados o en su defecto, las razones, por la demora. *El querellado no correspondió.*

6. Con fecha 5 de mayo de 1980 el referido abogado volvió a dirigirse por carta al querellado en términos parecidos a su carta anterior concediéndole hasta el 9 de mayo de 1980 para someter las contestaciones requeridas, advirtiéndole, que de lo contrario, se acudiría al Tribunal. *El querellado tampoco respondió.*

7. En fecha 14 de mayo de 1980 Frito Lay por conducto de su abogado, radicó una Moción al Amparo de la Regla 34.1 de las de Procedimiento Civil explicando la situación al Tribunal y solicitándole se le concedieran a los demandantes un término perentorio mayor de diez para descubrir lo solicitado con apercibimiento de sanciones. En esa misma fecha el Tribunal decretó la Orden solicitada concediendo el término de diez días y apercibió sobre la imposición de sanciones. *El querellado fue notificado de dicha Orden, de la cual hizo caso omiso.*

8. Con fecha 4 de junio de 1980 la demandada Frito Lay, mediante su representación legal radicó una Moción de Deses-

timación basada en la Regla 34.2(b)(3) de las de Procedimiento Civil y solicitó el archivo y desestimación con perjuicio de la demanda. Esta Moción fue notificada al querellado. Se señaló la discusión de la misma para el 12 de septiembre de 1980. *En dicha fecha el querellado no compareció.* El abogado de la demandada compareció, argumentó en apoyo de su solicitud y ofreció en evidencia copia fotostática de los interrogatorios y fotocopia del acuse de recibo de los mismos. *El Tribunal desestimó la acción por abandono e impuso a los demandantes el pago de $400.00 por concepto de honorarios de abogado.*

9. Los interrogatorios estaban dirigidos a cada uno de los demandantes individualmente. Dos de ellos sometieron sus contestaciones, las cuales fueron juramentadas por el querellado. El tercer demandante nunca compareció a contestar los interrogatorios y el querellado decidió esperar por dicho demandante. *No notificó al Tribunal, ni al abogado de la otra parte sobre las dificultades en obtener las contestaciones de ese tercer demandante, ni notificó las contestaciones que había obtenido de los otros dos. Dejo pasar el tiempo provocando así la pérdida de la causa de acción de los dos demandantes que fueron diligentes. El querellado llama a esto, "Error de Juicio".* (Énfasis suplido.) Caso Núm. O-85-143, Informe del Comisionado Especial, págs. 4–8.

La Procuradora General estuvo conforme con estas determinaciones. No obstante, argumentó que distinto a lo sostenido por el querellado Pérez Santiago, la falta de notificación al Estado era un obstáculo superable mediante el despliegue de una debida diligencia forense. Éste, por su parte, objetó que no se consignara expresamente por el Comisionado Especial, que la Sra. Luz Zereida conoció de la muerte de su esposo ocho (8) meses después. También señala que erró dicho comisionado al determinar que el ofrecimiento de "otra ayuda" que hizo a la reclamante, era gubernamental y, además, al concluir que no realizó gestión alguna al efecto.(2) Rechazó que se extraviaran los documentos del caso en su oficina. Finalmente, objetó que el

---

(2) Fue correcta esta determinación del Comisionado Especial.

Según expuso en la vista el propio querellado, su ofrecimiento fue de ayuda gubernamental.

Comisionado no concluyera que la demanda se desestimó por el requisito de falta de notificación al Estado y que no se aclarara si las múltiples visitas de la reclamante Zereida Pérez a su oficina, fueron antes o después de 30 de octubre de 1979. Respecto al cargo segundo, sólo señala que debió incluirse la solicitud de archivo de la queja por parte del reclamante.

Un cuidadoso examen de la transcripción de la prueba oral y la evaluación de la prueba documental nos llevan a considerar que las determinaciones de hecho que preceden son válidas y correctas. No existen fundamentos para alterarlas.

Pasemos, pues, a la segunda querella (Caso Núm. CE-87-354).

En ésta, se le imputaron los dos (2) cargos siguientes:

### CARGO I

El Lcdo. Carlos Jesús Pérez Santiago violó los Cánones de Etica Profesional en su relación de abogado–cliente con el Sr. Obdulio Rodríguez Caraballo, pues desatendió el caso en que lo representaba (Refiérase al caso de *Obdulio Rodríguez Caraballo Vs. Bechtel Constructors, etc.*, Civil Núm. 71-2750 radicado en el Tribunal Superior, Sala de Ponce y elevado a este Tribunal mediante la Resolución de 2 de octubre de 1986). La conducta observada por el Lcdo. Carlos Jesús Pérez Santiago refleja violación [a los Cánones] 18 y 19 de Etica Profesional —en cuanto al cliente querellante— y violación al Canon 12, en cuanto al deber de diligencia para con el Tribunal que tiene todo abogado en la tramitación de un pleito.

---

"P La señora Luz Zereida Pérez hablaba de que usted le había dicho que iba a radicar la ... demanda y que adicionalmente usted le iba a ayudar a ella. ¿En que consistía la ayuda esa?

"R Yo a lo que me refería es a que ella tenía unos niños, que en esa época eran mucho más menores, y que por lo que ella me informó de que estaban pasando necesidad, etc., yo le indiqué que como ella había venido de Estados Unidos, que aquí en Puerto Rico se podía solicitar ayuda económica para ellos a través de Servicios Sociales y agencias gubernamentales ...." Caso Núm. O-85–143, T.E., págs. 63–64.

### CARGO II

El Lcdo. Carlos Jesús Pérez Santiago también ha desatendido injustificadamente los trámites propios que se siguen en este tipo de procedimiento. Tampoco ha dado cumplimiento a la Resolución del 23 de enero de 1987, emitida por este Hon. Tribunal en este mismo caso. La conducta observada por el querellado refleja total menosprecio a los dictámenes judiciales y a los trámites que se realizan a nivel administrativo por encomienda de este Tribunal.

Por designación, también fueron ventilados ante el Comisionado Especial el ex Juez Superior López Pérez. Después de una conferencia con antelación a juicio,(³) se celebró la vista evidenciaria(⁴) en la cual la Oficina del Procurador General estuvo representada por la Lcda. Eliadís Orsini Zayas y el querellado a través del Lcdo. Julio Eduardo Torres.

A base de un análisis de la prueba, el Comisionado Especial formuló las determinaciones de hecho siguientes:

---

(³) Según el acta, en esta etapa la teoría que consignó el querellado fue que "[m]ientras él atendió el caso del Querellante, en varias ocasiones, el Abogado Querellado le requirió al Querellante que fuera a su Oficina para trámites relacionados con el caso y éste no lo hizo. Debido a la limitada experiencia que tenía el Abogado Querellado para esa época, no había desarrollado un sistema adecuado que le permitiera detectar una información como ésta, para rápidamente informarlo al Tribunal y/o tomar las medidas necesarias. Alega expresamente que tal cosa ha sido subsanada en su práctica profesional".

(⁴) Se estipuló el contenido del expediente del caso CS-71-2750 *Obdulio Rodríguez Caraballo v. Bechtel Constructions*, Tribunal Superior, Sala de Ponce. También varias comunicaciones cursadas entre la Oficina del Procurador General y el querellante desde los inicios de la querella; del querellante dirigidas al Secretario de Justicia, y las comunicaciones dirigidas a la dirección conocida de Rodríguez Caraballo cuya correspondencia no fue devuelta.

Se estipularon las declaraciones juradas de Miguel López Gutiérrez, del Lcdo. Rafael Santiago Errans y del Lcdo. Víctor Vargas Negrón, ex Juez Superior, relativas a la buena reputación del querellado como persona y como profesional.

El día de la vista se hizo esta otra estipulación: "Que el querellante contrató al abogado querellado para que lo representara en una acción civil cuyo asunto se concretó en el caso CS71-2750 de Obdulio Rodríguez Caraballo contra Bechtel Construction, etc. sobre incumplimiento de Contrato y Daños y Perjuicios, radicado en el Tribunal Superior, Sala de Ponce." Caso Núm. CE-87-354, Informe del Comisionado Especial, págs. 3–4.

El Procurador General presentó el testimonio del querellante Rodríguez Caraballo. El querellado Pérez Santiago prestó también testimonio.

## CARGO I

1. El querellado, Lcdo. Carlos J. Pérez Santiago fue admitido al ejercicio de la abogacía hace diecinueve (19) años. Durante ese tiempo ha practicado intensamente la profesión en la Ciudad de Ponce, donde goza de una magnífica reputación tanto en lo personal, como profesionalmente. Así se desprende de las Declaraciones Juradas suscritas por su colega, el Lcdo. Rafael Santiago Errans, el Sr. Miguel López Gutiérrez, cliente del querellado y el Lcdo. Víctor Vargas Negrón, Ex Juez Superior, quien lo conoce profesionalmente por más de diez (10) años.

2. Allá para el año 1971 el querellante, quien se dedicaba al negocio de cafetería para el expendio de comidas, contrató los servicios del querellado, para que lo representara en una acción Sobre Incumplimiento de Contrato y Daños y Perjuicios contra una compañía constructora. El 21 de junio de 1971 el querellado radicó la demanda *Obdulio Rodríguez Caraballo Vs. Bechtel Construction, etc.*, CS71–2750 del Tribunal Superior, Sala de Ponce. El expediente refleja los siguientes procedimientos:

a. Luego de incidentes de carácter procesal, el 30 de agosto de 1971, la parte demandada, representada por el Lcdo. Arturo F. Porrata Pila radicó una "Moción de Desestimación y/o de Sentencia" (Sic) y acompañó una certificación del Departamento de Salud, autenticada por el Departamento de Estado acreditativa de que el demandante carecía de licencia sanitaria para servir comidas en negocio ambulante dentro de los terrenos de la co demandada Bechtel Construction Co.

b. La referida Moción fue señalada para el 17 de septiembre de 1971, mediante Orden emitida por el Tribunal el 7 de septiembre de 1971. *Consta al pie de la Orden que el querellado fue notificado a su dirección*: Apartado 306, Ponce, P.R. De acuerdo a la minuta del 7 de septiembre compareció a la vista de la discusión de la moción aludida el Lcdo. Arturo F. Porrata, a quien el Tribunal instruyó para que radicase "un proyecto de sentencia sumaria, sin compromiso" para ser estudiado por el Tribunal. Nada se dispuso sobre la aparente incomparecencia del querellado y la parte demandante cuya representación ostentaba.

c. Mediante Resolución fechada 26 de enero de 1972, el Tribunal declaró Sin Lugar la Moción y concedió a la parte demandada 20 días para contestar la Demanda.

d. El 13 de febrero de 1972 la parte demandante radicó una Moción de Reconsideración, la cual fue señalada para el 25 de febrero. Surge de la Orden de señalamiento que el querellado fue notificado. De la minuta de dicho día surge la compa-

recencia del abogado de la parte demandada, quien argumentó la Moción. *Nada se dice sobre comparecencia o ausencia de la parte demandante y su abogado.* El Tribunal se reservó el fallo.

e. El 13 de marzo la parte demandante radicó un Memorando de Derecho en apoyo de la desestimación solicitada. En dicho escrito *se alega la incomparecencia de la parte demandante y su abogado (querellado),* tanto a la vista de la Moción de Desestimación, como a la de la Moción de Reconsideración.

f. El 1ro de junio de 1972 el Tribunal dictó una Resolución declarando Con Lugar la Desestimación solicitada con relación a unos codemandados, pero mantuvo la causa de acción contra la codemandada Bechtel Constructions Inc., a quien le concedió diez (10) días para contestar la demanda.

g. La Contestación a la Demanda, que incluyó varias defensas afirmativas, se radicó el 26 de julio de 1972.

h. El 10 de agosto de 1972 la parte demandante sometió a la parte demandada un extenso interrogatorio. Aparece a continuación en el expediente una Resolución de este Honorable Tribunal de fecha 1ro de septiembre de 1972 decretando "No ha Lugar" a un recurso de Certiorari que lleva el Número 0-72-204.

i. Con fecha 23 de abril de 1973 compareció la codemandada Bechtel Constructions, Inc., por conducto de sus abogados y radicó una Solicitud de Archivo por Inacción, la cual aparece notificada al abogado de la parte demandante (querellado). Dicha solicitud fue señalada para el 7 de mayo de 1973. De acuerdo a la minuta de esa fecha a la discusión de la Moción de Archivo compareció el Lcdo. Carlos Martínez Texidor, en representación de la parte demandada. *No surge comparecencia alguna de la parte demandante o su abogado. El Tribunal dictó Sentencia decretando la desestimación y archivo del caso por inactividad. Copia de dicha Sentencia fue archivada en autos en la misma fecha y se hizo constar la notificación a los abogados de las partes.*

j. De acuerdo al expediente, el 8 de abril de 1974 la parte demandante (querellado) radicó la Contestación al Interrogatorio, del 10 de agosto de 1972, un año y ocho meses después de haberse radicado. Los autos reflejan que esta es la primera comparecencia del querellado ante el Tribunal, personal o escrita, a partir de la radicación de la Demanda, efectuada el 21 de junio de 1971.

k. La dirección del querellado que aparece al calce de la demanda es Calle Sol Núm. 13, Apartado 306–Ponce, Puerto Rico 00731. La que expuso en los emplazamientos es: Calle Sol #13, Ponce, Puerto Rico. En su Segunda Comparecencia al Tri-

bunal de Instancia, allá para el año 1974, cuando radicó la Contestación al Interrogatorio, es: Apartado 6930, Sol 13, Ponce, Puerto Rico, 00731.

l. El 23 de octubre de 1974 el querellado radicó una Moción de Señalamiento indicando que el caso estaba "listo para vista". El 30 de octubre de 1974 la parte demandada ripostó con una "Moción en Oposición a Moción de Señalamiento" aludiendo al archivo anterior por abandono. No obstante, el Tribunal accedió al señalamiento solicitado y señaló la vista del caso en su fondo para el 11 de febrero de 1975. Las partes fueron notificadas y esta vez se notificó al querellado a su nuevo apartado postal (el 6930).

m. El 21 de noviembre de 1974 la parte demandada radicó una Moción para que se dejase sin efecto el señalamiento por haberse desestimado la demanda previamente haciendo alusión al archivo ya decretado.

n. Con fecha 26 de noviembre de 1974 el Tribunal declaró Con lugar dicha Moción y dejó sin efecto el señalamiento.

3. *La mera lectura del expediente aludido reflejaría un virtual abandono del querellado de los intereses de su cliente.* Desde que radicó la demanda, el 21 de julio de 1971, no vuelve a comparecer por escrito al Tribunal hasta el 8 de abril de 1974 cuando radicó la Contestación al Interrogatorio, esto es, once meses después de que se archivara el caso por abandono, lo cual ocurrió el 7 de mayo de 1973. *No obstante, no puede afirmarse por ello que el querellado abandonara totalmente el caso.* De entrada se percibe que el expediente no es el mejor ejemplo de un tracto ordenado. La minuta del 17 de septiembre de 1971, cuando se discutió la Moción de Desestimación radicada por la parte demandada, no expresa nada en cuanto a la comparecencia del querellado y su cliente. Posteriormente, dicha Moción se declaró Sin Lugar. En la minuta del 25 de febrero de 1972 cuando se discutió la Reconsideración solicitada por la parte demandada, tampoco se menciona la incomparecencia del querellado y su cliente. Esto contrasta notablemente con el testimonio vertido por el propio querellante el día de la vista, quien declaró que había comparecido al Tribunal en tres ocasiones acompañado del querellado, que éste había participado en dichas vistas y había ganado todos los planteamientos que había hecho. (Pág. 16 de la Transcripción). El querellado también declaró que compareció en varias veces al Tribunal acompañado del querellante. Significativamente se falló a favor de la parte demandante en la controversia relacionada con la desestimación en cuanto a la constructora codemandada Bechtel Construction, Inc. *No podemos, por tanto, concluir como cuestión de*

*hecho, que el querellado abandonó, a su cliente por lo menos, en las primeras etapas de los procedimientos.*

4. Como indicáramos, el 10 de agosto de *1972* la parte demandada sometió a la demandante interrogatorio. No fue hasta el 8 de abril de 1974 que se radicó la Contestación a dicho interrogatorio, esto es, 18 meses después de radicados. Es improbable que la parte demandada, quien demostró una marcada diligencia en el curso del caso, no hubiese radicado escrito alguno solicitando alguna providencia judicial contra la parte demandante por la tardanza en contestar el interrogatorio. Del expediente no surge requerimiento alguno a esos efectos.

5. Adicionalmente aparece del expediente una Resolución de este Alto Foro declarando "No ha Lugar" a lo que evidentemente fue un recurso de Certiorari radicado por la parte demandada. Aparte de dicho documento no hay constancia alguna en el expediente sobre el recurso radicado.

6. *De lo anterior puede presumirse razonablemente que, debido al tiempo transcurrido y al manejo del expediente éste está incompleto.* Es bueno indicar que el mismo fue localizado, luego de múltiples esfuerzos, en la División de Administración de Documentos de la Administración de los Tribunales, Calle Vela, Parada 35 ½, Hato Rey, Puerto Rico.

7. *El fútil y tardío esfuerzo del querellado de radicar la Contestación al Interrogatorio y solicitar señalamiento del caso en su fondo, luego de que el mismo fuere archivado por inactividad refleja un total abandono del caso, luego de sus esfuerzos iniciales en el mismo, o un pobre desconocimiento de los procedimientos judiciales. El querellado atribuye su conducta a "falta de perspicacia", ya que para esa época estaba casi empezando la práctica de su profesión.*

8. El querellado, quien guarda recuerdos muy vagos del caso debido al tiempo transcurrido y quien no pudo localizar el expediente en su oficina pues no los retiene por más de diez (10) años sostiene que luego de los procedimientos iniciales del caso perdió contacto con su cliente. Esto es creíble considerando los cambios de residencia del querellante, como veremos más adelante. *No obstante, el querellado no informó al Tribunal sobre la ausencia de comunicación con sus cliente[s]. Tampoco notificó a éste, al Tribunal o a la otra parte el cambio de número de apartado de su dirección postal.*

9. El querellante, Sr. Obdulio Rodríguez inició su queja mediante carta al Secretario de Justicia de 15 de mayo de 1976, donde hacía alusión al caso radicado e indicaba que el mismo "fue tres veces a vista en la corte y en las tres veces los abogados de la compañía suspendieron el caso". Que desde el 1974 no

había podido ver a un abogado. Que otro abogado dijo que: "a lo mejor habían archivado el caso" y que vivía del Bienestar Público con $35.50 al mes. Ofreció como dirección: Calle Hostos Núm. 29 Bajos, San Sebastián, Puerto Rico, 00155.

10. El 14 de junio de 1976 la Oficina del Procurador General contestó la referida carta y solicitó del querellante cierta información. Se le invitó, además, a ir personalmente a dicha oficina para explicar su problema. El querellante nada hizo. En la vista declaró que no recibió esa carta. Ante su inactividad, el 5 de junio de 1979 el Procurador General volvió a dirigirse por carta al querellante indicándole que por no haberse recibido información alguna relacionada con el caso en los últimos doce (12) meses, se le concedían treinta (30) días para que se comunicara con dicha oficina, advirtiéndosele que de no recibirse comunicación alguna dentro de dicho término, se archivaría la queja "sin ulteriores procedimientos". No hubo respuesta alguna del querella[nte].

11. No es hasta el 7 de junio de 1985, *nueve años después*, que el querella[nte] revive su querella mediante carta dirigida al Secretario de Justicia. Luego de ello escribió otras cartas. La dirección que ofreció esta vez fue HC–04–14471, Barrio Calabaza, San Sebast[iá]n, Puerto Rico, 00755. El querellado residió en las Parcelas Encar[na]ción de Peñuelas, hasta el 1973. Recibía su correspondencia én el Buzón 633 de Ponce, pero que en aquel tiempo correspondía a Peñuelas. Después de ese año y por estar enojado con su esposa, se mudó para San Sebastián. Realmente residía en ambos sitios, ya que tenía familiares residiendo en Ponce. En el año 1974 se mudó definitivamente para la Calle Hostos de San Sebastián. En el año 1975 ó 76 (el querellante no pudo precisar) se mudó para el Barrio Calabaza de dicha ciudad.

12. El querellante se fue para Nueva York a mediados del año 1978 "a ver si podía conseguir un abogado que pudiera bregar" con su caso. No lo consiguió. Regresó en el 1980. Fue entonces que se topó con la carta del Procurador General de 5 de junio de 1979 que le concedía los treinta días aludidos. No hizo gestión alguna hasta el 7 de junio de 1985, cuando se dirigió por carta al Secretario de Justicia. Esto es, desde el año 1976 al 1985 no hizo gestión alguna, ni notificó a nadie que su dirección había cambiado de la Calle Hostos al Barrio Calabaza de San Sebast[iá]n.

13. *Los frecuentes cambios de dirección del querellante sin informarle a nadie, su dejadez y abandono del caso desde el año 1976 hasta el 1985, sin que hiciese gestión alguna para acelerarlo demuestran una ausencia de interés en su propio caso.* El

querellante no suplió la información requerida por el Procurador General en la carta de 14 de junio de 1976, tampoco hizo gestión alguna en favor de su caso luego de recibir, en el año 1980, la carta del Procurador General de 5 de junio de 1979, donde se le concedían treinta días para que se comunicase o se le archivaría el caso. El querellado le escribió algunas cartas al querellante, en unas ocasiones compareció, en otras no. El mismo querellado no pudo precisar si en alguna ocasión fue citado por escrito por el querellado. Todo esto le resta credibilidad a su testimonio. *Nadie debe tener más interés en un caso que el propio perjudicado.* La consecución feliz de un proceso está supeditado al interés desplegado por la parte perjudicada. *Esto, naturalmente no justifica las actuaciones y omisiones del querellado, ya apuntadas.*

### CARGO II

Se imputa al querellado que también ha desatendido injustificadamente los trámites propios que se requieren en este tipo de procedimiento y que tampoco dió cumplimiento a la Resolución emitida en este caso por este Honorable Tribunal el 23 de enero de 1987, la cual refleja total menosprecio a los dictámenes judiciales y a los trámites que se realizan a nivel administrativo por encomienda de este Tribunal.

Mediante la Resolución aludida este Honorable Tribunal ordenó al querellado remitir a la Oficina del Honorable Procurador General copia de todos los documentos que hubiese remitido al Tribunal. Además se le apercibió que el término a contestar la Resolución del 18 de diciembre de 1986 se vencería el 5 de febrero de 1987.

La Resolución alegadamente incumplida se originó por una Moción Informativa radicada por el Procurador General donde indicaba que no había recibido copia de una Moción que había radicado el querellado ante este Honorable Tribunal. *Esta supuesta omisión del querellado no está sostenida.* Ni de los autos, ni de la prueba desfilada surge que las actuaciones del querellado hayan causado indebida[s d]ilaciones en la tramitación de este caso, ni menosprecio alguno, a los dictámenes de este Honorable Tribunal o a los trámites a nivel administrativo. (Énfasis suplido.) Caso Núm. CE-87-354, Informe del Comisionado Especial, págs. 4–13.

Frente a estas determinaciones, la Procuradora General objetó que el Comisionado Especial no concluyese "que el querellado abandonó, a su cliente por lo menos en las pri-

meras etapas de los procedimientos". Caso Núm CE-87-354, Informe del Comisionado Especial, pág. 8. No procede la objeción. Aparte de ello, no varía nuestra razón de decidir. Ciertamente el querellado Pérez Santiago no cumplió diligentemente con su encomienda ni atendió bien el caso; en términos generales lo hizo en forma negligente.

Los hechos antes expuestos (Cargos I y II, Caso Núm. 0-85-143 y Cargo I, Caso Núm. CE-87-354) reflejan que el querellado Pérez Santiago violó los principios deontológicos consignados en los Cánones 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.([5]) Véanse: *In re Vargas Soto*, 127 D.P.R. 576 (1990); *In re Vélez Valentín*, 124 D.P.R. 403 (1989); *In re Acosta Grubb*, 119 D.P.R. 595 (1987); *In re Rosario*, 116 D.P.R. 462 (1985); *In re Cardona Vázquez*, 108 D.P.R. 6 (1978); *In re Arana Arana*, 112 D.P.R. 838 (1982).

---

([5]) Disponen respectivamente:

"Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

"Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

"Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan. No debe tampoco ceder en el cumplimiento de su deber por temor a perder el favor judicial ni la estimación popular. No obstante, un abogado puede asumir cualquier representación profesional si se prepara adecuadamente para ello y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia." Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

"El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.

"Siempre que la controversia sea susceptible de un arreglo o transacción razonable debe aconsejar al cliente el evitar o terminar el litigio, y es deber del abogado notificar a su cliente de cualquier oferta de transacción hecha por la otra parte.

"El abogado que representa varios clientes con intereses comunes o relacionados entre sí no debe transigir ninguno de los casos envueltos sin que cada cliente esté enterado de dicha transacción y sus posibles consecuencias." (Énfasis suplido.) Canon 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

■ Estos casos, en síntesis, consagran el deber de diligencia profesional que tiene todo abogado en el descargo de los asuntos del cliente, incompatible con la desidia, despreocupación, inacción y displicencia. Cuando esa conducta negativa refleja un patrón repetitivo, la situación se torna éticamente grave.([6])

■ Los hechos anteriormente narrados demuestran palmariamente un proceder en extremo indiferente y poco diligente por el querellado Pérez Santiago en la tramitación de estos tres (3) casos. Nos referimos particularmente a la demora en presentar la demanda de la Sra. Zereida Pérez, su reiterada incomparecencia a las vistas en los tres (3) procedimientos, la falta de notificación de las contestaciones a los interrogatorios en el caso contra *Frito Lay*, el incumplimiento de la orden del tribunal para que descubriera evidencia solicitada y en la tramitación del pleito de Rodríguez Caraballo.

■ Las excusas del querellado Pérez Santiago no satisfacen el *quantum* de responsabilidad que debemos esperar de todo profesional comprometido con la justicia. No justifica su inacción en el caso de la Sra. Zereida Pérez la tesis de poca probabilidad de prevalecer, debido al transcurso de más de ocho (8) meses de ocurridos los hechos, sin notificarse al Secretario de Justicia dentro de noventa (90) días.([7])

---

([6]) Ese enfoque armoniza con los pronunciamientos en *Acevedo v. Compañía Telefónica de P.R.*, 102 D.P.R. 787 ( 1974 ). Allí enfatizamos que un abogado está comprometido con su cliente a desplegar el mayor celo, cuidado y diligencia en la atención de los asuntos que se le han encomendado. Véanse, además: *In re Rodríguez Torres*, 104 D.P.R. 758 (1976), y *Heftler Const. Co. v. Tribunal Superior*, 103 D.P.R. 844 (1975).

([7]) De la propia demanda surgía que ella, cuando contrató sus servicios profesionales, se había enterado de la muerte de su esposo aproximadamente dos (2) semanas antes.

La Ley Núm. 121 de 24 de junio de 1966 (32 L.P.R.A. sec. 3077a) establece que la notificación al Estado Libre Asociado tiene que hacerse dentro de los noventa (90) días de ocurridos los hechos o *de conocidos*. Bien pudo argumentar que esas circuns-

Menos justificación tiene haber permitido que expirara el término prescriptivo para presentar la demanda. Al momento de ser contratado toda la causa de acción estaba viva. Aun cuando no la hubiese podido presentar a tiempo, al menos debió haber defendido su procedencia en cuanto a los codemandantes menores.

A fin de cuentas, si verdaderamente se trataba de una acción sin posibilidades de éxito —según alega ahora el querellado Pérez Santiago— debió declinar la representación legal solicitada y no causarle tantos y tan serios inconvenientes a la reclamante Zereida Pérez.

Tampoco existe justificación razonable, en el segundo caso, para permitir perder la causa de acción de los demandantes Muñiz y García. Es inexcusable su incomparecencia a las vistas. Las objeciones, dificultades o imposibilidades para cumplir con lo solicitado por la otra parte y lo ordenado por el Tribunal, debió ser objeto de planteamientos con notificación oportuna. No lo hizo. Ni siquiera asistió a la vista señalada para discutir el incumplimiento en *cuanto* a los interrogatorios.

■ Asimismo, surge claramente de los hechos que faltó a su deber de mantener informado a sus clientes de las incidencias del caso, incluso de la desestimación. Véanse: *In re Pagán Ayala*, 109 D.P.R. 712 (1980); *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984). Este estado de *desinformación* llegó al extremo de negarle a los reclamantes en el primer caso el acceso a su expediente y examen de esos documentos.

En resumen, nociones mínimas de diligencia y responsabilidad exigían al querellado Pérez Santiago una mejor descarga de sus responsabilidades o, en la alternativa, su pronta renuncia si no le era posible —por sus múltiples compromisos o falta de interés— proseguir eficientemente

---

tancias justificaron la tardanza en hacer la notificación.

estas causas. Su proceder demostró una extrema indiferencia a los valores y principios éticos que inspiran los Cánones 18 y 19 del Código de Ética Profesional, *supra*. Revela una práctica descuidada y negligente. *Dista mucho de honrar la toga este tipo de postulación.*

La situación es seria. Ahora bien, concediéndole el beneficio de que estos hechos ocurrieron cuando comenzaba la práctica de la profesión, que desde esa época hasta el presente no se han presentado quejas adicionales en su contra, limitaremos la sanción disciplinaria a un (1) año de suspensión del ejercicio de la abogacía.

*Se dictará la correspondiente sentencia.*