EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Julio César Colón Ortiz | 2007 TSPR 156<br><br>172 DPR \_\_\_\_ |

Número del Caso: CP-2003-20


Fecha: 19 de julio de 2007


Oficina del Procurador General:

> Lcda. Cynthia Iglesias Quiñones
> Procuradora General Auxiliar
>
> Lcda. Noemí Rivera de León
> Procuradora General Auxiliar
>
> Lcda. Mariana D. Negrón Vargas
> Subprocuradora General


Abogados de la Parte Querellada:

> Lcdo. Jesús M. Jiménez


Materia: Conducta Profesional


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Julio César Colón Ortiz

CP-2003-20

PER CURIAM

San Juan, Puerto Rico, a 19 de julio de 2007

El 23 de marzo de 1987 la Sala de Humacao del antiguo Tribunal Superior de Puerto Rico dictó sentencia, en un caso sobre cobro de dinero y daños y perjuicios, mediante la cual ordenó a Teodoro Rosa Gabino, parte demandada, a pagarle $10,105 en concepto de daños y perjuicios, y $1,500 por honorarios de abogado, a Ana Lydia Martínez Rosado y su esposo Manuel Navedo Ortiz y la sociedad legal de gananciales compuesta por ellos.

Rosa Gabino no cumplió con el pago ordenado en la sentencia emitida por el tribunal. Martínez Rosado y Navedo Ortiz contrataron al Lcdo. Julio César Colón Ortiz para que éste hiciera eficaz la sentencia recaída a favor de ellos. El 24 de

agosto de 1988, el tribunal emitió una orden sobre ejecución de sentencia en la cual ordenó el embargo de un camión propiedad de Rosa Gabino. Posteriormente, se emitió el correspondiente mandamiento de embargo.

Con anterioridad a ello, el 14 de julio de 1988, Rosa Gabino alegadamente vendió el camión anteriormente descrito a Rosa's Block Center. El traspaso de la licencia del camión a favor de dicha Compañía se llevó a cabo el 15 de septiembre de 1988 y se registró en el Departamento de Transportación y Obras Públicas el 6 de octubre de 1988.

Así las cosas, el 30 de septiembre de 1988, varios alguaciles acudieron a Rosa's Block Center para efectuar el embargo del camión. Una vez allí, los alguaciles se percataron que la licencia del camión aparecía a nombre de Alejandro Rosa Gabino, hermano de la parte demandada y presidente de Rosa's Block Center. Por dicha razón, no efectuaron el embargo. Sin embargo, el 3 de octubre de 1988, y a insistencias del Lcdo. Colón Ortiz, el tribunal ordenó que se embargara el camión nuevamente. Dicho embargo se diligenció el 5 de octubre de 1988.

El 14 de octubre de 1988, Rosa's Block Center, en calidad de parte interventora, presentó una moción de nulidad de embargo en el pleito antes mencionado. No obstante, el 9 de noviembre de 1988, y aun pendiente dicha moción de resolución, se expidieron los edictos para vender en pública subasta el camión. Celebrada la subasta, el 30

de noviembre de 1988 se le adjudicó el camión a Martínez Rosado y a Navedo Ortiz.

Luego de subastado el bien, el tribunal celebró una vista en relación a la moción de nulidad de embargo presentada por Rosa's Block Center. Posteriormente, el 7 de febrero de 1989, el tribunal determinó que la subasta era nula por haberse efectuado antes de resolverse la moción de nulidad de embargo. En dicha resolución, el tribunal aclaró que no estaba pasando juicio sobre la validez del embargo ni sobre las alegaciones de que la venta del camión fuese en fraude de acreedores.

Por los hechos anteriormente expuestos, el 18 de agosto de 1989, Rosa's Block Center presentó una demanda en el Tribunal Superior de Humacao sobre daños y perjuicios contra Martínez Rosado, Navedo Ortiz, la sociedad legal de gananciales compuesta por ellos, José Alberto Lugo Negrón, y el aquí querellado, Lcdo. Colón Ortiz, por el alegado embargo ilegal del camión. Dicha acción fue trasladada al entonces Tribunal Superior de San Juan.

El 28 de enero de 1991, los esposos Navedo-Martínez presentaron una demanda de co-parte contra el Lcdo. Colón Ortiz. En ella, adoptaron todas las alegaciones formuladas en la demanda original y responsabilizaron al abogado de todo acto negligente y culposo que pudiera ser la causa del alegado embargo ilegal. Solicitaron, además, resarcimiento por las angustias mentales sufridas como consecuencia de las actuaciones del Lcdo. Colón Ortiz. En la contestación a

dicha demanda contra co-parte, Colón Ortiz negó las alegaciones en su contra y sostuvo que ejercitó toda circunspección, pericia y cuidado en la etapa de ejecución de sentencia.

Pendiente el caso de resolución, los Lcdos. Tadeo Negrón Medero y Marcelino Meléndez Lafontaine presentaron una queja contra Colón Ortiz ante este Tribunal. Además de señalar la falta de comunicación entre dicho abogado y sus clientes, adujeron que éste había cobrado cincuenta por ciento en honorarios contingentes. Como prueba de ello, incluyeron copia de la moción de inhibición presentada por el querellado, así como una copia de un cheque de $25,000 que alegadamente recibió Colón Ortiz de parte de Martínez Rosado y Navedo Ortiz. Además, acompañaron copia de una carta en la cual Martínez Rosado y Navedo Ortiz autorizaron a General Electric Capital Co. a entregarle a Colón Ortiz la mencionada suma de dinero.

El 17 de febrero de 1995, Colón Ortiz contestó dicha queja. En ella, sostuvo que la alegada cuantía de honorarios nunca había sido objeto de controversia y que independientemente de ello, el Lcdo. Negrón Medero no tenía "standing" para levantar dicho punto. Negó haber cobrado el cincuenta por ciento en honorarios contingentes y aseguró, por el contrario, haber cobrado el veinticinco por ciento. Solicitó se dejara pendiente cualquier determinación al respecto hasta tanto se resolviera finalmente el caso civil pendiente.

El 31 de marzo de 1995, le concedimos término a los Lcdos. Negrón Medero y Meléndez Lafontaine para que reaccionaran a lo señalado por Colón Ortiz. En su comparecencia, ambos abogados sostuvieron que la "legitimidad" que tenían para presentar la queja contra el Lcdo. Colón Ortiz surgía tanto de la Regla 13 de este Tribunal, como del Canon 38 del Código de Ética Profesional. Plantearon que Colón Ortiz debió haber explicado la razón por la cual había procedido a vender el camión en pública subasta a sabiendas de que un tercero había impugnado el embargo y que el tribunal había tomado jurisdicción sobre dicha controversia. Posteriormente, este Tribunal paralizó los trámites disciplinarios hasta tanto recayera sentencia en el caso civil radicado.

El 20 de junio de 1997, el tribunal de instancia emitió sentencia en el caso condenando a los demandados, por el embargo ilegal del camión, a pagarle al demandante Rosa's Block Center la suma de $40,000 por los daños sufridos. Además, le ordenó a Colón Ortiz pagarle a Martínez Rosado y a Navedo Ortiz $3000 por las angustias mentales sufridas como consecuencia del embargo ilegal.[1]

Resuelto definitivamente el caso, el 13 de noviembre de 2003, el Procurador General presentó una Querella ante

---

[1] Inconforme, Colón Ortiz acudió al Tribunal de Apelaciones. Dicho foro confirmó la sentencia del tribunal de instancia. En desacuerdo nuevamente, Colón Ortiz acudió ante este Tribunal mediante *certiorari*. El de 26 de abril de 2001, emitimos una Sentencia en la cual confirmamos la emitida por el Tribunal de Apelaciones.

este Tribunal contra el Lcdo. Colón Ortiz. En la misma, le imputó a éste haber violado los Cánones 18 y 19 del Código de Ética Profesional. Adujo que Colón Ortiz no tuvo comunicación alguna con Martínez Rosado y Navedo Ortiz luego de que éstos lo contrataran para ejecutar la sentencia contra Rosa Gabino y que por ello había faltado a su deber de mantener siempre informado al cliente de todo asunto importante que surgiera en el desarrollo del caso. De igual forma, sostuvo que Colón Ortiz no defendió los intereses de sus clientes al haber solicitado el embargo a sabiendas de que existía la posibilidad que el bien perteneciera a un tercero. Luego de Colón Ortiz haber contestado la querella, el 24 de mayo de 2004 emitimos una Resolución en la cual nombramos a la Honorable Ygrí Rivera de Martínez, ex juez del Tribunal de Apelaciones, para que en presencia de las partes y como Comisionada Especial, recibiera la prueba y rindiera un informe con sus determinaciones de hecho y recomendaciones. <u>Resolvemos</u>.

I

Reiteradamente hemos insistido en el deber que tiene todo abogado de defender diligentemente los intereses de su cliente, según lo exige el Canon 18 de Ética Profesional, 4 L.P.R.A. Ap. IX. *In re* Laureano Molina, res. el 13 de enero de 2004, 2004 TSPR 6; *In re* Laborde Freyre, 149 D.P.R. 59 (2003); *In re* Grau Díaz, 154 D.P.R. 70 (2001); *In re* Aguila López, 152 D.P.R. 49 (2000); *In re*

Arroyo Rivera, 148 D.P.R. 354 (1999); *In re* Verdejo Roque, 145 D.P.R. 58 (1998); *In re* Pérez Santiago, 131 D.P.R. 676 (1992); *In re* Acosta Grubb, 119 D.P.R. 595 (1987).[2]

Una vez el abogado asume la representación profesional de un cliente, viene obligado a mantenerlo informado en cuanto a los asuntos importantes que surjan del caso a tenor con las disposiciones del Canon 19, el cual establece que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado." No hacerlo viola la ética profesional. *In re* Rosario, 116 D.P.R. 642 (1985); *In re* Acosta Grubb, ante; *In re* Cardona Vázquez, 108 D.P.R. 6 (1978).

Hemos sostenido que "[e]l deber de informar al cliente es un elemento imprescindible de la relación fiduciaria del abogado y el cliente." *In re* Alonso Santiago, res. 13 de septiembre de 2005, 2005 TSPR 137; *In re* Héctor M. Hernández Nazario, Louis De Mier-Le Blanc, 159 D.P.R. 63 (2003). Por consiguiente, hemos resuelto que cuando un abogado mantiene a su cliente ajeno a las incidencias de su caso, ello constituye una violación, no sólo al Canon 19, sino al proceso de impartir justicia en general. *In re* Laborde Freyre, ante.

---

[2] Dicho Canon 18 establece que "es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable".

II

Colón Ortiz sostiene que mantuvo a sus clientes informados del proceso judicial mediante carta del 27 de marzo de 1989. En dicha carta, Colón Ortiz le informó a sus clientes que Rosa's Block Center había presentado una moción en auxilio de jurisdicción solicitando la nulidad del embargo del camión y que dicha Compañía podía presentar una demanda por embargo ilegal. Le indicó, además, que el 6 de febrero de 1989 se celebró una vista en relación a la moción presentada por Rosa's Block Center y que a raíz de lo allí acontecido, el tribunal sorpresivamente emitió una resolución en la cual declaró nula la venta judicial. Que por razón de dicha resolución, Colón Ortiz había apelado ante el antiguo Tribunal de Circuito de Apelaciones y que el costo de dicho escrito era aproximadamente $5,000.

Del expediente surge que Colón Ortiz no se comunicó, ni mantuvo informado a sus clientes desde el día en que fue contratado, hasta la fecha de la referida misiva. Si bien es cierto que Colón Ortiz, mediante carta, le comunicó a sus clientes de lo acontecido en el caso, <u>éste debió mantener informado a sus clientes según surgían los sucesos y no al final de lo acontecido</u>. La carta, traída por Colón Ortiz para refutar su alegada violación al Canon 19, no hace más que confirmar dicha infracción, pues su fecha revela que Colón Ortiz no mantuvo informado a sus clientes según surgían los asuntos importantes del caso, sino que espero hasta que el tribunal pasara juicio sobre la

controversia para informar a su cliente de todo lo acontecido. Éste, además, radicó un escrito de apelación, sin consultarlo con sus clientes, para luego pretender cobrarle honorarios por dicha gestión.

El deber de un abogado de mantener a sus clientes informados es continuo. Tan pronto advino en conocimiento de ello, Colón Ortiz debió haberle informado a sus clientes que el camión a embargarse aparecía a nombre de un tercero y las consecuencias de proceder con dicho embargo. Dicha información no sólo era imprescindible, sino que pudo haber evitado los trámites judiciales posteriores que surgieron a raíz del embargo ilegal.

De todo lo anterior también surge que Colón Ortiz ciertamente no actuó con la diligencia y el saber que requiere el Canon 18. Como reseñáramos, Colón Ortiz tenía conocimiento de que cuando los alguaciles fueron a embargar el camión por primera vez se toparon con que éste estaba inscrito a nombre de una tercera persona. No obstante, Colón Ortiz nuevamente solicitó el embargo del bien sabiendo las consecuencias que ello conllevaba. La mejor evidencia de ello lo es la determinación del tribunal de instancia, en la sentencia que emitió en contra del querellado, a los efectos de que la intervención de Colón Ortiz fue negligente y la causa directa del embargo ilegal. Obviamente, las actuaciones de Colón Ortiz no fueron responsables, todo lo contrario, puesto que perjudicaron a sus clientes.

Habida cuenta de lo anterior, somos de la opinión que Colón Ortiz indudablemente infringió los Cánones 18 y 19 del Código de Ética Profesional. No obstante, del expediente surgen varios atenuantes que influyen en nuestra resolución final del asunto. Primeramente, Colón Ortiz satisfizo la obligación que surgió de la sentencia recaída en su contra. A su vez, mediante el acuerdo de satisfacción de sentencia de 31 de octubre de 2002, Martínez Rosado y Navedo Ortiz relevaron al querellado de cualquier otra responsabilidad que pudiera surgir del referido caso. Tomamos en consideración, además, que Colón Ortiz nunca antes se había enfrentado a un procedimiento sobre conducta profesional y que se sentía profundamente consternado por la presentación del mismo.

Por los fundamentos que anteceden, procede limitar la sanción disciplinaria a imponer al Lcdo. Julio César Colón Ortiz a una fuerte censura y a apercibirlo de que, de incurrir en conducta similar en el futuro, la misma conllevará la imposición de medidas disciplinarias más severas en su contra.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Julio César Colón Ortiz

CP-2003-20

SENTENCIA

San Juan, Puerto Rico, a 19 de julio de 2007

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia limitando la sanción disciplinaria a imponer al Lcdo. Julio César Colón Ortiz a una fuerte censura. Se le apercibe que, de incurrir en conducta similar en el futuro, la misma conllevará la imposición de medidas disciplinarias más severas, incluyendo la suspensión del ejercicio de la profesión.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo