*In re* SAMUEL MADURO CLASSEN, querellado.

*Número:* MC-91-8          *Resuelto:* 7 de noviembre de 1994

*José M. Sagardía Pérez*, Presidente del Colegio de Abogados, *Antonio Arraiza Miranda*, Presidente de la Comisión de Ética Profesional, y *Mady Pacheco*, Oficial Investigadora,

abogados de la parte querellante; *Samuel Maduro Classen, pro se.*

PER CURIAM: El 20 de mayo de 1994, el Comisionado Especial José M. Aponte Jiménez nos sometió un informe relacionado con la conducta profesional del Lcdo. Samuel Maduro Classen, a quien el Colegio de Abogados de Puerto Rico le imputaba haber violado los Cánones de Ética Profesional por no haber actuado con diligencia y desatender un asunto que le fuera encomendado.

A continuación haremos un breve recuento de los hechos que el Comisionado Especial encontró probados. En 1983, los hermanos del Sr. José A. Lorenzana García (en adelante el quejoso) contrataron los servicios profesionales del licenciado Maduro Classen con relación a la liquidación y división de la herencia del padre de éstos. El caudal hereditario consistía en una casa de vivienda ubicada en el barrio Río Plantation en Bayamón, que estaba ocupada por el quejoso y su esposa.

El licenciado Maduro Classen confrontó problemas con el quejoso al realizar gestiones conducentes a la liquidación y distribución de la herencia, ya que éste rehusaba ceder la posesión de la casa. Todo esto ocasionó un deterioro de las relaciones entre el licenciado Maduro Classen y los hermanos del quejoso. El quejoso también se sintió "molesto" con el licenciado Maduro Classen, cuando éste le escribió para indicar que debía desocupar la casa o pagar renta, y que el deseo y la intención de los hermanos era la de alquilar la propiedad.

Así las cosas, y para facilitar la liquidación de la herencia, la madre y los hermanos del quejoso optaron por cederle una parte del dinero que recibirían de la venta de la propiedad para que pudiese comprar una casa. Cuando la propiedad finalmente se vendió, el quejoso recibió doce mil dólares ($12,000) como su participación en la herencia y seis mil dólares ($6,000) aportados por su madre y sus

hermanos. Este dinero se depositó en una cuenta bancaria a nombre del quejoso para que pudiera comprarse una vivienda.

Más tarde, la hermana del quejoso, la Sra. Dinah Lorenzana, le pidió al licenciado Maduro Classen que interviniese en una negociación para la compra de una casa en Vega Baja para el quejoso. El licenciado Maduro Classen visitó la propiedad y recomendó la transacción a base de un costo de dieciocho mil dólares ($18,000) a dieciocho mil quinientos dólares ($18,500).

Al comenzar la negociación con el dueño de la propiedad, el licenciado Maduro Classen se percató que se trataba de una parcela y que tendría que gestionar el título de la propiedad con "Programas Sociales", debido a que el vendedor sólo disfrutaba de un usufructo sobre el terreno. A solicitud de la hermana del quejoso, preparó un contrato de opción de compra, que más tarde fue otorgado ante él por el quejoso y un apoderado del dueño. También lo notarizó. En el contrato se estableció como condición para la entrega del precio pactado "gestionar todos los trámites pertinentes y de Ley para el traspaso de la parcela con todos sus usos, derechos y estructura y que se haya obtenido el consentimiento de las Autoridades pertinentes para ocupar dicha parcela". El precio de la opción —quinientos dólares ($500)— se le entregó al dueño al otorgarse el contrato de opción. Los honorarios del licenciado Maduro Classen fueron sufragados por la Sra. Dinah Lorenzana.

El quejoso ocupó la propiedad, le hizo mejoras por un valor de dos mil dólares ($2,000) y la vivió por espacio de varios meses. Mientras tanto, el dueño le comunicó de forma insistente al licenciado Maduro Classen su deseo de que se realizara la transacción de compraventa pactada. Éste, a su vez, le indicaba que el quejoso exigía el título de propiedad para comprarla. El quejoso entendía que el dueño no había cumplido con su parte de la transacción, pero tampoco se mudaba. Como pasaba el tiempo y no se

había realizado la compraventa, el quejoso retiró de la cuenta bancaria los dieciocho mil dólares ($18,000) que tenía para llevar a cabo la transacción. Los invirtió en un proyecto que luego fracasó perdiendo, así, su inversión.

Como consecuencia de todo lo anterior, el dueño demandó al quejoso por incumplimiento de contrato, reivindicación y daños y perjuicios. Reclamó la cantidad adeudada de diecisiete mil quinientos dólares ($17,500); tres mil doscientos cincuenta dólares ($3,250) en concepto de daños, más las costas, los gastos y honorarios de abogado. Mientras el licenciado Maduro Classen "estaba en la calle y salía de viaje", la hermana del quejoso, con el consentimiento de éste, hizo las gestiones para que el licenciado Maduro Classen asumiera la representación legal en el caso. Éste aceptó, pero no formalizó el contrato escrito ni obtuvo información sobre la dirección y el número de teléfono del quejoso para mantenerlo informado del desarrollo del caso. Descansó en que la hermana del quejoso sería el vehículo de comunicación. No recibió honorarios por sus servicios.

El Comisionado Especial determinó que la demanda y el emplazamiento fueron entregados por el quejoso o su hermana al licenciado Maduro Classen en una fecha anterior al 20 de octubre de 1987. Al recibir la demanda, éste se percató que el término para contestarla había vencido. El tribunal anotó la rebeldía el 23 de octubre de 1987 y, el 3 de noviembre de 1987, señaló la vista del caso en rebeldía para el 4 de diciembre de 1987. Este señalamiento se notificó ese mismo día. Aunque la contestación a demanda se había presentado desde el 28 de octubre de 1987, cinco (5) días antes de la orden de señalamiento y seis (6) días antes de que se notificase, ésta no se le notificó al licenciado Maduro Classen. El 2 de diciembre de 1987, se enteró que la vista en rebeldía estaba señalada para dos (2) días más tarde, el 4 de diciembre de 1987. El 3 de diciembre de 1987, presentó una moción en la que solicitó que se dejara sin

efecto la rebeldía y se pospusiera la vista, pues tenía otros casos señalados para el mismo día.

El licenciado Maduro Classen no le notificó al quejoso de la vista, aunque intentó hacerlo. Le solicitó a la Sra. Dinah Lorenzana que lo hiciera para que el quejoso pudiese asistir a la vista. El tribunal celebró la vista rebeldía y, el 15 de diciembre de 1987, dictó sentencia contra el quejoso. Le ordenó desalojar la propiedad; pagar mil doscientos cincuenta dólares ($1,250) y dos mil dólares ($2,000) en concepto de daños a la propiedad y por los sufrimientos y angustias mentales del demandante, y le impuso dos mil dólares ($2,000) por concepto de honorarios de abogados. Además, denegó la solicitud para que se dejara sin efecto la rebeldía. Esta sentencia se notificó el 17 de diciembre de 1987. El 24 de ese mismo mes, el licenciado Maduro Classen presentó una moción para que se dejase sin efecto la sentencia. El tribunal la denegó y notificó dicha determinación el 5 de enero de 1988. El 8 de enero de 1988, pero depositada en el correo el 12 de enero de 1988, el licenciado Maduro Classen le informó, por escrito, al quejoso sobre la sentencia dictada y le apercibió que contaba con cinco (5) días para "apelar". La carta la envió por correo certificado a casa del Sr. Benjamín Lorenzana, un hermano del quejoso. No supo más del quejoso hasta que éste le pidió que le entregara el expediente.

Con relación al caso, el licenciado Maduro Classen estimaba que existían fundamentos para revisar la sentencia. No lo hizo, sin embargo, porque el quejoso "no volvió" y no tenía instrucciones del cliente. Además, la Sra. Dinah Lorenzana le informó que el quejoso le había dicho que no tenía interés en la casa, debido a que no tenía dinero para cumplir con la opción.

El Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece que un abogado tiene el deber de "defender los intereses del cliente diligentemente, desple-

gando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable". De otra parte el Canon 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, le impone el deber de "mantener a su cliente informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado".

Veamos cuál fue la conducta del licenciado Maduro Classen con respecto al caso que le fuera encomendado por el quejoso. Al ser contratado, se le entregó una demanda cuyo término para contestar había vencido. Éste, no obstante, tardó ocho (8) días en presentar una contestación. Inmediatamente después de enterarse que la vista en rebeldía estaba señalada, presentó una moción para que se dejara sin efecto la rebeldía y se pospusiera la vista. También, oportunamente, presentó una moción para que se dejara sin efecto la sentencia dictada contra el quejoso. Sin embargo, no es hasta después que el tribunal deniega dicha moción que trata de comunicarse con el quejoso. A pesar de lo apremiante del tiempo, tardó varios días en depositar en el correo la carta que le informaba al quejoso del término jurisdiccional improrrogable para recurrir en alzada.

El cumplimiento con su deber de mantener al cliente informado y de poder actuar con diligencia —cumpliendo las instrucciones de éste— se complicó porque el licenciado Maduro Classen no había obtenido ni la dirección ni el teléfono de su cliente, viéndose así precisado a comunicarse con éste a través de terceras personas.

La conducta desplegada por el licenciado Maduro Classen, a pesar de no ser ejemplarizante, no denota una falta de diligencia crasa. Éste, sin embargo, debió haber establecido, desde un principio, una comunicación directa con su cliente que le permitiera cumplir efectiva y diligentemente con los Cánones 18 y 19 del Código de Ética Profesional, *supra*.

Bajo las circunstancias específicas de este caso, entendemos que las actuaciones u omisiones del licenciado Maduro Classen no son de tal gravedad que constituyan una violación a los cánones de ética profesional y mucho menos procede la imposición de la sanción drástica de la suspensión. Sin embargo, *se le apercibe al licenciado Maduro Classen que en el futuro deberá actuar con mayor diligencia y darle fiel cumplimiento a su deber de mantener a sus clientes informados, tratando, dentro de lo posible, que toda comunicación con sus clientes sobre fases importantes de los asuntos que atienda, sea directa y efectiva, no a través de terceras personas.*

*Se dictará sentencia de conformidad con lo aquí expresado.*

Los Jueces Asociados Señores Negrón García y Fuster Berlingeri no intervinieron.