*In re* SAMUEL MADURO CLASSEN, querellado.

*Número:* CP-95-16          *Resuelto:* 7 de marzo de 1997

*José A. Crescioni Benítez*, abogado del querellante; *Genaro Marchand*, abogado del querellado; *Flavio E. Cumpiano*, Comisionado Especial.

PER CURIAM:

I

Susana Cruz de Ríos contrató los servicios del Lcdo. Samuel Maduro Classen con el propósito de que éste presentara a nombre suyo y de su esposo una demanda en daños y perjuicios por impericia médica en contra del Hospital Regional de Bayamón, el Hospital Hermanos Meléndez, el Dr. César Cintrón Valle y la Administración de Compensación al Paciente. El contrato entre ellos no se formalizó por escrito, pero ambos pactaron verbalmente que los servicios contratados serían pagados a base de honorarios contingentes. Durante la primera visita a la oficina del licenciado Maduro Classen, Cruz de Ríos pagó cuarenta dólares ($40) para gastos de presentación y de emplazamiento.

Así las cosas, una vez presentada la demanda y luego de varios trámites procesales, las partes comenzaron sus gestiones de descubrimiento de prueba. Durante todo este proceso, Cruz de Ríos pasó la mayor parte del tiempo en Washington D.C., pues éste era el lugar donde recibía el tratamiento para su padecimiento. No empece a ello, tanto en Puerto Rico como en Estados Unidos Cruz de Ríos mantuvo una continua comunicación con la oficina de Maduro Classen y ésta con ella. Mientras se llevaba a cabo el descubrimiento de prueba, tanto el Hospital Hermanos Meléndez como el Estado Libre Asociado de Puerto Rico (E.L.A.) le enviaron a Maduro Classen sus respectivos interrogatorios. El E.L.A. envió, además, en la misma moción un

requerimiento de admisiones y una solicitud para la inspección de documentos.

A pesar de que el Hospital Hermanos Meléndez envió su solicitud de interrogatorio el 10 de febrero de 1982, no fue hasta el 16 de septiembre de 1982, luego de varias órdenes de apercibimiento de sanciones, e incluso de desestimación, que Maduro Classen envió la contestación. Adujo Maduro Classen que desde el 10 de enero de 1982 Cruz de Ríos sabía que debía contestar el referido interrogatorio, mas no fue hasta septiembre de dicho año que ésta completó todos los trámites relativos al mismo.

Por su parte, el E.L.A. envió su interrogatorio el 19 de mayo de 1982. Al no recibir la contestación de los demandantes, el 22 de agosto de 1982 el E.L.A. solicitó que se diesen por admitidos los requerimientos y se tomasen aquellas medidas procedentes en derecho. Para atender dicha solicitud, el 9 de septiembre de 1982 el tribunal de instancia dictó una orden mediante la cual le concedió cinco (5) días a los demandantes para contestar el pliego de interrogatorio, bajo apercibimiento de sanciones.

El 16 de septiembre de 1982, Maduro Classen, en representación de los demandantes, presentó una moción en la que solicitó que no se le impusiesen sanciones, " 'ya que en este mismo día esta[ban] envia[n]do ... las contestaciones al interrogatorio sometido por la parte demandada' ". Al E.L.A. no le fue remitida una copia de dicha moción, pues, según surge de los autos, Maduro Classen entendió que la orden emitida por el tribunal se refería al interrogatorio enviado por el Hospital Hermanos Meléndez. Más aún, se desprende del expediente que Cruz de Ríos fue notificada del pliego de interrogatorio remitido por el E.L.A. el 1ro de junio de 1983, esto es, más de un (1) año después de que le enviaran el mismo a Maduro Classen.

Sin conocer de la referida moción, el 15 de marzo de 1983 el E.L.A. solicitó nuevamente que se dieran por admitidos los requerimientos y que se le concediera un término perentorio a los demandantes para contestar el interrogatorio, ya que éstos no lo habían contestado. Atendida

dicha moción, el 25 de marzo de 1983 el antiguo Tribunal Superior, Sala de Bayamón, dictó sentencia que desestimó la demanda.(¹) Justificó la desestimación en el continuo incumplimiento de los demandantes con las órdenes del tribunal respecto al descubrimiento de prueba.

Siete (7) días después, el 5 de abril de 1983, sin informarle a Cruz de Ríos de lo acontecido, Maduro Classen presentó una moción para indicar nuevamente que los demandantes habían cumplido con la orden emitida por el tribunal en lo relativo a la contestación de los interrogatorios y pliegos de admisiones. Conjuntamente, por medio de otra moción, solicitó que se dejara sin efecto la sentencia emitida, y a tales fines acompañó una declaración jurada del Lcdo. José R. Martínez, en la cual éste expresaba que el 12 de marzo de 1983 había remitido a los representantes legales del E.L.A. una copia de la contestación que le había sido solicitada. De acuerdo con los documentos que obran en el expediente, Maduro Classen delegó el manejo del caso al licenciado Martínez sin el conocimiento ni el consentimiento previo de Cruz de Ríos.

En contestación a dicha moción, el 2 de abril de 1983 el E.L.A. informó al tribunal que el 24 de marzo de 1983 recibió de los demandantes una copia casi ilegible de una contestación a interrogatorio, pero que la misma se refería al pliego enviado por el Hospital Hermanos Meléndez y no al interrogatorio que ellos notificaron. Por ello, el E.L.A. solicitó que se dictara sentencia que desestimara la demanda presentada en su contra.

El 11 de abril de 1983 el tribunal de instancia dictó una orden que decía: A la moción solicitando se deje sin efecto sentencia; nada que proveer. Igualmente, el tribunal contestó la moción del E.L.A. mediante una orden que disponía: Sentencia fue dictada el 25 de marzo de 1983. A pesar de la claridad de dichas órdenes, Maduro Classen no recurrió en revisión ante nos. Además, le indicó a su cliente que

(¹) El 29 de marzo de 1983 se archivó en autos una copia de la notificación de esa sentencia.

el tribunal había desestimado la demanda en contra del Hospital Regional de Bayamón, pero que intentaría reabrir el caso contra éste mientras el pleito seguía su curso contra los demás demandados.

Tal como mencionáramos anteriormente, un (1) año después de que el E.L.A. enviara su interrogatorio a Maduro Classen y después de que el tribunal desestimara la demanda, el 1ro de junio de 1983 Maduro Classen le envió a Cruz de Ríos las contestaciones al referido interrogatorio para que ésta lo firmara y lo devolviera a la mayor brevedad posible. Diligentemente, el 12 de julio de 1983 ésta regresó a Puerto Rico y devolvió a la oficina de Maduro Classen el documento que le fue previamente remitido.

Preocupada por el estado del caso, Cruz de Ríos intentó en repetidas ocasiones, infructuosamente, comunicarse con Maduro Classen. Cuando ella intentaba hablar con Maduro Classen, éste no se encontraba en la oficina o no acudía a la cita establecida. Más aún, en las pocas ocasiones en que habló con Maduro Classen, éste le requirió que compareciera a una toma de deposición, que visitara a un médico que le iba a servir en el juicio como perito e, incluso, le pidió que se quedara en Puerto Rico hasta tanto llegaran a una transacción con los demandados.

Así las cosas, el 26 de julio de 1983 Maduro Classen presentó en el tribunal una moción para informar que en ese día le había enviado al E.L.A. su contestación al interrogatorio. También presentó otra moción en la que solicitó el relevo de sentencia. Adujo que no procedía la desestimación de la demanda, pues del expediente no surgía que el E.L.A. le hubiese notificado de su interrogatorio.[2] También sostuvo que los demandantes debían ser relevados de la sentencia, al menos en cuanto al Hospital Her-

---

[2] En la referida moción, el Lcdo. Manuel Maduro Classen no explicó por qué no objetó dicha falta de notificación anteriormente, a pesar de que varias órdenes del tribunal hicieron referencia al interrogatorio cursado por el Estado Libre Asociado (E.L.A.), y de que en una moción presentada por el mismo E.L.A. se acompañó copia de éste.

manos Meléndez, ya que el interrogatorio remitido por éste había sido contestado.

El 12 de agosto de 1983 el tribunal denegó la moción de relevo de sentencia. Maduro Classen tampoco acudió ante nos en revisión de esta denegatoria.

En 1984, al ver que no recibía información de lo que acontecía en el pleito, Cruz de Ríos le requirió a Maduro Classen el expediente de su caso. Es en este momento que el abogado le informó a Cruz de Ríos que sus casos habían sido archivados. Ésta visitó a otros abogados para que le informaran el *status* de sus casos y uno de ellos le confirmó que los casos se habían archivado, por lo que ésta había perdido toda causa de acción.

A raíz de estos hechos, el 9 de octubre de 1984 Cruz de Ríos presentó una queja ante el Colegio de Abogados de Puerto Rico contra Maduro Classen.

El 13 de diciembre de 1995, luego de los trámites procesales de rigor, el Colegio de Abogados presentó formalmente una querella ante este Tribunal en contra de Maduro Classen. En ella hizo referencia al Informe sobre Conducta Profesional emitido por su Comisión de Ética, ratificado por su Junta de Gobierno y presentado previamente ante nos. En dicho informe, la Comisión de Ética del Colegio concluyó que Maduro Classen violó los Cánones 18, 19 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, pues faltó al deber de comunicación para con su cliente, desatendió el asunto que le fue encomendado, no desplegó una conducta sincera y honrada ante los tribunales y su representado, y no cumplió con los requerimientos de dicha comisión.

El 16 de enero de 1996 el querellado presentó su escueta contestación a la querella. Adujo, sin explicar las razones, que en el caso de epígrafe la desestimación de la demanda se debió única y exclusivamente a los propios actos de Cruz de Ríos.

El 9 de febrero de 1996 designamos como Comisionado Especial (en adelante Comisionado) encargado de atender la querella al Lcdo. Flavio E. Cumpiano. El 5 de junio de

1996, luego de oír y recibir la prueba que las partes sometieron, el Comisionado nos presentó un informe en el cual relató los hechos antes mencionados. El 24 de enero de 1996, el querellado nos solicitó la transcripción de la vista celebrada ante el Comisionado. El 12 de julio de 1996 denegamos la moción aludida, quedando sometido el caso.

Pasamos a resolver.

## II

Un examen del informe sometido por el Comisionado del informe de Conducta Profesional emitido por la Comisión de Ética del Colegio de Abogados, de la queja presentada contra el querellado y de los demás documentos que obran en autos, nos llevan forzosamente a concluir que la conducta del querellado estuvo caracterizada por la inacción, desidia, despreocupación y displicencia. Ciertamente, en más de una ocasión el querellado tuvo la oportunidad de evitar la desestimación del caso con meramente enviar a los demandantes el interrogatorio que desde hacía mucho tiempo había recibido. Así lo hizo con el interrogatorio remitido por el Hospital Hermanos Meléndez sin que hubiese reparo alguno de los demandantes. También lo hizo, después de la desestimación, con el interrogatorio del E.L.A., y sólo en una pocas semanas sus clientes regresaron a Puerto Rico con el pliego debidamente contestado y prestos para ayudar en cualquier trámite de su caso. No cabe duda de que con dicha omisión el querellado incurrió en una conducta impropia y antiética, en abierta violación al Canon 18 del Código de Ética Profesional, el cual, en lo aquí pertinente, expresamente dispone que "[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable". 4 L.P.R.A. Ap. IX. Véanse, además: *In re Rodríguez Mercado*, 133 D.P.R. 208 (1993); *In re Rosario*, 116 D.P.R. 462 (1985); *In re Arana Arana*, 112 D.P.R. 838 (1982).

Por otro lado, resulta meridianamente claro que el querellado también violó las disposiciones del Canon 19 del Código de Ética Profesional que establece inequívocamente que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". 4 L.P.R.A. Ap. IX. Véanse: *In re Padilla Pérez*, 135 D.P.R. 770 (1994); *In re Pérez Santiago*, 131 D.P.R. 676 (1992); *In re Acosta Grubb*, 119 D.P.R. 595 (1987); *In re Pagán Ayala*, 109 D.P.R. 712 (1980). Evidentemente, esa no fue la conducta desplegada por el querellado. En todo momento el querellado tuvo a sus clientes ajenos de todo lo que acontecía en el caso, e incluso evadía todo tipo de comunicación con ellos. Nótese que éste ni siquiera informó a sus clientes que el caso había sido archivado. Como dijéramos en *Colón Prieto v. Géigel*, 115 DP.R. 232, 240 (1984), "[n]o e[ra] necesario mucho esfuerzo mental para aceptar que una sentencia de archivo ... claramente cae entre los asuntos a ser informados inmediatamente por el abogado al cliente". El querellado aquí, cuando menos, tenía el deber de asesorarlos acerca del derecho de apelación que les cobijaba. Con su actitud el querellado no sólo provocó que el caso fuera desestimado, sino también le negó a sus clientes la oportunidad de apelar dicha determinación.

Por último, el querellado también actuó en contravención con los principios esbozados en el Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Éste le impone a todo abogado la obligación de actuar sincera y honradamente ante los tribunales y para con sus representados. En el presente caso el querellado le mintió al tribunal en repetidas ocasiones, pues informó que el interrogatorio del E.L.A. había sido contestado, cuando le constaba que ni siquiera lo había enviado a su cliente. Asimismo, le mintió a sus clientes al decirles que la demanda seguía su curso contra los demás demandados, sabiendo que eso no era cierto. Tal actuación no es propia de un

funcionario del tribunal, más aún cuando recae en los abogados gran parte de la confianza pública en la justicia. Véase *In re Currás Ortiz*, 141 D.P.R. 399 (1996).

## III

Por los fundamentos antes expuestos, *se suspende al licenciado Samuel Maduro Classen del ejercicio de la abogacía por un período mínimo de un (1) año, y hasta que este Tribunal otra cosa disponga.*[3]

*Se dictará sentencia de conformidad con lo antes expresado.*

El Juez Presidente Señor Andréu García no intervino. El Juez Asociado Señor Negrón García no intervino.

---

[3] Anteriormente habíamos advertido y apercibido al licenciado Maduro Classen de su deber de actuar con mayor diligencia y de mantener a sus clientes informados. Véase *In re Maduro Classen*, 137 D.P.R. 426 (1994).