EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Héctor Collazo Maldonado <br> y Nelson Rivera Cabrera | Queja <br><br> 2003 TSPR 76 <br><br> 159 DPR \_\_\_\_ |

Número del Caso: CP-1998-9


Fecha: 3 de abril de 2003


Oficina del Procurador General:

              Lcda. Yvonne Casanova Pelosi
              Procuradora General Auxiliar

Abogados de la Parte Querellada:

              Lcda. María Elena Vázquez Graziani
              Lcdo. Virgilio Machado Avilés

 Materia: Conducta Profesional
          (La suspensión será efectiva una vez advenga final y
          firme la Sentencia, conforme la Regla 45 del Reglamento
          del Tribunal Supremo sobre reconsideración).

          Este documento constituye un documento oficial del Tribunal
          Supremo que está sujeto a los cambios y correcciones del
          proceso de compilación y publicación oficial de las
          decisiones del Tribunal. Su distribución electrónica se hace
          como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


*In re*: Héctor Collazo Maldonado
y Nelson Rivera Cabrera


CP-1998-9


Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ


San Juan, Puerto Rico, a 3 de abril de 2003


> *"[Q]uien es negligente no ejerce, sino sólo simula ejercer el derecho."*[1]


La Honorable Georgina Candal, Juez del Tribunal de Primera Instancia de la Sala Superior de Bayamón, elevó ante este Tribunal una "minuta" en la cual se hacía un resumen de la conducta profesional observada por los Lcdos. Héctor Collazo Maldonado y Nelson Rivera Cabrera, abogados que representaban a la parte demandante en un pleito de daños y perjuicios, por impericia médica, que se estaba tramitando ante el

---

[1] Colón Prieto v. Géigel, 115 D.P.R. 232, 240 (1984), citando a J.B. Iturraspe, Función Social de la Abogacía, 2da. ed., Santa Fe, Argentina, Ed. Castellví, 1967, pág. 44.

mencionado tribunal de instancia. Examinada la referida "minuta", el Tribunal estimó procedente referir el asunto, para la correspondiente investigación e informe, a la Oficina del Procurador General de Puerto Rico.

El Procurador General rindió un detallado y comprensivo informe. Del mismo surge, en lo pertinente, que los referidos abogados mal informaron y/o hicieron falsas representaciones al tribunal de instancia e incumplieron con su responsabilidad profesional, de manera reiterada, al no informar, con honestidad, al referido tribunal sobre la verdadera situación respecto a la prueba pericial con que contaban y al no contestar interrogatorios que le fueron sometidos por la parte contraria; conducta que causó que el foro primario le impusiera sanciones económicas montantes a $1,100.00 a dichos abogados y que, al no ser satisfechas las mismas, puso en peligro de desestimación la causa de acción de sus representados.

En su Informe el Procurador, calificó la referida conducta como "un clásico ejemplo de desidia, despreocupación, crasa negligencia e irresponsabilidad profesional".[2] En resumen, concluyó que dicha conducta resultaba claramente violatoria de las disposiciones de los Cánones 12, 18, 35 y 38 de los de Ética Profesional.

---

[2] Véase página 8 del Informe del Procurador General.

En vista de dicho Informe, mediante Resolución a esos efectos, instruimos al Procurador General para que procediera a radicar las correspondientes Querellas contra los abogados Collazo Maldonado y Rivera Cabrera. Radicadas las Querellas, el Lcdo. Collazo Maldonado contestó la misma, no así el Lcdo. Rivera Cabrera.[3] Designamos al ex-Juez Superior, Lcdo. Enrique Rivera Santana, como Comisionado Especial. El Lcdo. Rivera Santana rindió el correspondiente informe. Un examen del mismo demuestra que las determinaciones de hechos que realizara el Comisionado Especial confirman lo expresado por el Procurador General en el informe que dicho funcionario radicara ante este Tribunal.[4]

---

[3] En vista a ello, resolvimos que se entendía negada la querella radicada en contra del Lcdo. Rivera Cabrera.

[4] De un examen independiente de los autos, claramente se desprende la conducta negligente e impropia de los abogados. Veamos.

En primer lugar, resalta el reiterado incumplimiento de los querellados a su deber de informarle al tribunal de instancia, y a la otra parte, sobre la prueba pericial que presentarían en corte. Esto conllevó que el referido tribunal emitiera órdenes apercibiendo a la parte representada por estos abogados que no admitiría en evidencia el informe pericial. También les apercibió, en dos ocasiones, que de incumplir con la orden de presentar el referido informe decretaría la desestimación de la demanda.

Asimismo, los aquí querellados faltaron a su obligación de realizar las gestiones necesarias para que fueran contestados unos interrogatorios que le fueron sometidos por la parte adversa, lo cual puso en riesgo la causa de acción de los demandantes, sus representados. Ello considerando que el tribunal de instancia había emitido una orden apercibiéndoles de la posible desestimación de su demanda. También incumplieron con uno

(Continúa . . .)

Examinado el informe rendido por el Comisionado Especial, le concedimos a todas las partes --esto es, al Procurador General y a los dos abogados querellados-- un término simultáneo de treinta (30) días para que "proced[ieran] oportunamente [a expresar] sus posiciones, y objeciones, si alguna, al referido Informe". El Procurador General prontamente compareció, expresando su conformidad con el mismo. Los abogados querellados no comparecieron. Partimos de la premisa que éstos no tienen objeción alguna al informe rendido por el Comisionado Especial. Resolvemos.

I

En más de una ocasión hemos resuelto que un abogado que acepta un caso y luego no demuestra la competencia y

_____

de los señalamientos hechos por el tribunal al no comparecer a la conferencia con antelación al juicio.

Por otro lado, resulta claro que, desde el comienzo del litigio, el querellado Rivera Cabrera conocía sobre la no disponibilidad del perito contratado. Sin embargo, pasaron casi tres (3) años y nunca notificó de este hecho a las partes, al tribunal, ni a los abogados de la parte adversa.

Surge del expediente que el tribunal le impuso a los abogados varias sanciones económicas montantes a mil cien dólares ($1,100.00) por el reiterado incumplimiento de éstos para con las órdenes emitidas por dicho foro. Es de notar que para el año 1998, fecha en que el tribunal decidió elevar el expediente ante este Tribunal, dichas sanciones aún no habían sido satisfechas. Como si esto fuera poco, los dos abogados involucrados no respondieron a la orden emitida por este Tribunal en la que le concedimos un término para que se expresaran en torno al informe emitido por el Comisionado Especial. Por su parte, Rivera Cabrera no contestó la querella disciplinaria y tampoco compareció a los procedimientos ante el Comisionado Especial.

diligencia que exige el ejercicio de la abogacía violenta las disposiciones del Código de Ética Profesional. *In re Laborde Freyre*, res. el 12 de junio de 1999, 99 TSPR 124. Todo abogado tiene la obligación de atender los intereses de sus clientes desplegando la mayor diligencia, celo y cuidado en los asuntos que se le han encomendado. Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C.18. Véase, además: *In re Cardona Ubiñas*, res. el 15 de marzo de 2002, 2002 TSPR 48; *In re Ortiz Velázquez*, 145 D.P.R. 308(1998); *In re Avilés Vega*, 141 D.P.R. 627 (1996); *In re Acosta Grubb*, 119 D.P.R. 595 (1987).

A esos efectos hemos reiterado que el deber de diligencia profesional es incompatible con la desidia, despreocupación, inacción y displicencia. *In re Padilla Pérez*, 135 D.P.R. 770, 776 (1994); *In re Pérez Santiago*, 131 D.P.R. 676 (1992). Todo abogado puede asumir cualquier representación legal si se prepara adecuadamente y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia. Canon 18, ante. Su desempeño debe ser siempre uno adecuado, responsable, capaz y efectivo. *In re Román Rodríguez*, res. el 14 de noviembre de 2000, 2000 TSPR 168.

Entre algunos de los muchos tipos de conducta que hemos sancionado, y catalogado como violatorios de este importante deber de diligencia, se encuentran: no

comparecer a los señalamientos del tribunal;[5] no contestar interrogatorios que le son sometidos;[6] no informar a las partes sobre la presentación de un perito;[7] desatender o abandonar el caso;[8] permitir que expire el término prescriptivo o jurisdiccional de una acción;[9] cualquier tipo de actuación negligente que pueda conllevar o, en efecto, resulte en la desestimación o archivo del caso.[10]

Indudablemente la conducta de los abogados en el presente caso contravino lo dispuesto en el Canon 18, ante, y la norma jurisprudencial expuesta anteriormente. Los abogados incumplieron crasamente con el deber de diligencia al no presentar el informe pericial; no informarle prontamente al tribunal y a las partes respecto

---

[5] Véase *In re* Marrero Figarella, 146 D.P.R. 541 (1998); *In re* Pagán Hernández, 141 D.P.R. 113 (1996); *In re* Pérez Santiago, 131 D.P.R. 676 (1992); Acevedo Cabrera v. Compañía Telefónica, 102 D.P.R. 787 (1974); *In re* Acosta Grubb, ante.

[6] Véase *In re* Maduro Classen, 142 D.P.R. 611 (1997); *In re* Pérez Santiago, ante; Maldonado Ortiz v. Srio. de Rec. Naturales, 113 D.P.R. 494 (1982).

[7] Véase *In re* Marrero Figarella, ante.

[8] Véase *In re* Guadalupe Díaz, res. el 19 de septiembre de 2001, 2001 TSPR 128; *In re* Laborde Freyre, ante; *In re* Pérez Santiago, ante; *In re* Acosta Grubb, ante.; *In re* Díaz Alonso, Jr., 115 D.P.R. 755 (1984); *In re* Coll, 101 D.P.R. 799 (1973).

[9] Véase *In re* Padilla Pérez, ante; *In re* Pérez Santiago, ante; *In re* Vélez Valentín, 124 D.P.R. 403 (1989); Pueblo v. Miranda Colón, 115 D.P.R. 511, 512 (1984).

[10] Véase *In re* Guadalupe Díaz, ante; *In re* Rosario, 116 D.P.R. 462 (1985); *In re* Laborde Freyre, ante; *In re* Padilla Pérez, ante; Dávila v. San Miguel, Inc., ante; *In re* Acosta Grubb, ante.; Maldonado Ortiz v. Srio. de Rec. Naturales, ante.

a los problemas confrontados con el perito; no comparecer a los señalamientos del tribunal; y al no contestar los interrogatorios. El hecho de que tales actuaciones, en varias ocasiones, haya puesto a los demandantes en riesgo de ver su causa de acción desestimada constituye el mejor ejemplo de la falta de diligencia exhibida por los aquí querellados.

De igual manera, la actuación de los querellados al no informarle a sus clientes sobre la no disponibilidad del perito, y los problemas confrontados con relación a éste, constituyó una grave falta en contravención a lo estatuido en el Canon 19 de Ética Profesional. En éste se exige que el abogado mantenga siempre informado a su cliente de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. 4 L.P.R.A. Ap. IX C.19. Véase, además: *In re* Cardona Ubiñas, ante; *In re* Ortiz Velázquez, ante; *In re* Vélez Valentín, 124 D.P.R. 403 (1989); *In re* Arana Arana, 112 D.P.R. 838 (1982).

Por otro lado, el no actuar con premura con relación a la presentación del informe de prueba pericial, unido al constante incumplimiento con las órdenes del tribunal de instancia y al hecho de no satisfacer las sanciones impuestas, tuvo el efecto de dilatar irrazonablemente el procedimiento judicial. Ello en contravención a lo preceptuado en el Canon 12 de Ética Profesional, que dispone, en lo pertinente, que "[e]s deber del abogado...ser puntual en su asistencia y conciso y exacto

en el trámite y presentación de sus causas. Ello implica desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución." Canon 12, ante; _In re Guadalupe Díaz_, res. el 19 de septiembre de 2001, 2001 T.S.P.R. 128. Hemos expresado que esta obligación ha de cumplirla el abogado en todas las etapas de un litigio, y comprende el acatar fielmente las órdenes del tribunal. _In re_ Pagán Hernández, 141 D.P.R. 113 (1996). Cónsono con lo anterior hemos enfatizado que los abogados deben la más estricta observancia a las órdenes judiciales. _In re Ortiz Velázquez_, 145 D.P.R. 308, 313 (1998), _In re_ Padilla Pérez, 135 D.P.R. 770, 778 (1994); Martínez Rivera v. Sears, Roebuck de P.R., 98 D.P.R. 641 (1970). De otro modo pueden quedar sujetos a nuestro rigor disciplinario.

La constante desobediencia de los aquí querellados para con las órdenes del tribunal de instancia demuestra una grave infracción a los principios básicos de ética profesional que exigen el mayor respeto hacia los tribunales. El comportamiento de todo abogado "no debe ser otro que el fiel cumplimiento de la ley y el respeto al poder judicial." _In re Díaz Alonso Jr._, 115 D.P.R. 755, 162 (1984); Acevedo Cabrera v. Compañía Telefónica de P.R., 102 D.P.R. 787, 791 (1974).

Por otra parte, el que dichos abogados, por espacio de aproximadamente dos (2) años, incurrieran en una falsa representación de hechos ante el tribunal de instancia

creando una expectativa de que contaban con un perito médico que estaba disponible para comparecer, cuando no era así, no puede menos que llevarnos a concluir que tal deshonestidad violentó el Canon 35. Éste específicamente dispone que la conducta de todo abogado ante los tribunales debe ser sincera y honrada. "No es sincero ni honrado el utilizar medios inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de hechos...". Canon 35, ante; *In re Pagán Hernández*, ante, a la pág. 119. Asimismo, dicha conducta infringe lo preceptuado en el Canon 38 a los efectos de que todo abogado debe conducirse de forma digna y honorable aportando a la consecución de una mejor administración de la justicia. 4 L.P.R.A. Ap. IX C.38.

Por último, la dejadez y despreocupación de los querellados al no contestar las órdenes de este Tribunal, como tampoco la querella disciplinaria, por parte del Lcdo. Rivera Cabrera, constituye una negativa incomprensible y contumaz de un miembro del foro en cumplir con los procedimientos establecidos por este Tribunal. En más de una ocasión hemos advertido que conducta de esa índole no será tolerada por esta Curia. *In re Nicot Santana*, 129 D.P.R. 717 (1992); *In re Pagán Rodríguez*, 122 D.P.R. 532 (1988); *In re Rosa Batista*, 122 D.P.R. 485 (1988).

II

Es correcto que los tribunales de instancia poseen el poder inherente para vindicar la majestad de la ley y para hacer efectiva su jurisdicción, pronunciamientos y órdenes. E.L.A. v. Asociación de Auditores, 147 D.P.R. 699, 681 (1999); Pérez Pascual v. Vega Rodríguez, 124 D.P.R. 529, 535 (1989); Sterzinger v. Ramírez, 116 D.P.R. 762, 787 (1985). El efectivo funcionamiento de nuestro sistema judicial, y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. Pueblo v. Vega Alvarado, 121 D.P.R. 282, 287 (1988). Es por ello que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. Ortiz Rivera v. Agostini, 92 D.P.R. 187, 193-94 (1965).

En virtud de esos poderes, los tribunales de instancia tienen a su alcance múltiples mecanismos procesales para mantener y asegurar el orden en los procedimientos ante su consideración, para hacer cumplir sus órdenes y para realizar cualquier otro acto que resulte necesario para cumplir a cabalidad sus funciones. E.L.A. v. Asociación de Auditores, ante. Asimismo, tienen el poder de tomar medidas dirigidas a supervisar y controlar  la conducta de los abogados que postulan ante

sí. Meléndez Vega v. Caribbean International News, res. el 29 de junio de 2000, 2000 TSPR 101; K-Mart Corp. v. Walgreens of P.R., Inc., 121 D.P.R. 633, 637-38 (1988). Algunos de estos mecanismos son: las multas y sanciones económicas,[11] el desacato civil y criminal,[12] la facultad para descalificar abogados,[13] y la facultad para ordenarle a un abogado que renuncie a la representación legal de su cliente,[14] entre otros.

De lo anterior se colige que, en efecto, los tribunales de instancia tienen a su haber suficientes métodos para controlar los procedimientos, poner en vigor sus órdenes e inclusive para supervisar y controlar la

---

[11] Véase: Regla 5 (c) de las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. II-A; Regla 37.3 y 44.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Regla 85 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A; Importaciones Vilca, Inc. v. Hogares Crea, Inc., 118 D.P.R. 679 (1987); Dávila v. San Miguel Inc., 117 D.P.R. 807 (1986).

[12] 4 L.P.R.A. sec. 362(b); Regla 40.9 de Procedimiento Civil, 32 L.P.R.A. Ap . III; Regla 242 (a) y (b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; In re Díaz García, res. el 11 de febrero de 2003, 2003 TSPR 13; Pueblo v. Santiago Agricourt, 147 D.P.R. 179 (1998); Pueblo v. Lamberty González, 112 D.P.R. 79 (1982); Pérez Pascual v. Vega Rodríguez, ante; Pueblo v. Vega Alvarado, ante.

[13] Véase Meléndez Vega v. Caribbean International News, ante; Fed. Pesc. Playa Picúas v. U. S. Industries, Inc., 135 D.P.R. 303, 317 n. 25 (1994); K-Mart Corp. v Walgreens of P.R., Inc., ante. En este último caso claramente establecimos que el procedimiento de descalificación no constituye de por sí una acción disciplinaria ya que la potestad de disciplinar a la clase togada recae exclusivamente sobre este Tribunal. Ibid. a la pág. 638.

[14] Véase, In re Orlando Roura, 119 D.P.R. 1 (1987).

conducta de los abogados que ante ellos postulan; ellos sin que sea necesaria nuestra intervención.

Es por ello que estamos de acuerdo en que los múltiples mecanismos procesales que tienen a su disposición los tribunales de instancia hacen innecesario que ejerzamos nuestra jurisdicción disciplinaria en todo caso en que se denuncie una irregularidad menor en torno a la conducta de un abogado. Del mismo modo, estamos contestes en que un caso que verse, exclusivamente, sobre la falta de pago de sanciones impuestas por el tribunal a un abogado es un ejemplo del tipo de situación en que los tribunales tienen la potestad de utilizar sus mecanismos procesales sin que sea necesario que este Tribunal ejerza sus prerrogativas disciplinarias.

Ahora bien, la conducta exhibida por los abogados en el caso de autos, en particular la del Lcdo. Nelson Rivera Cabrera, traspasó los linderos que permiten limitar los mecanismos correctivos a los disponibles por los tribunales de instancia. Éste no es un simple caso de falta de pago de sanciones, sino uno en que la conducta de los abogados trascendió a un nivel que claramente requiere la intervención de este Tribunal. Ello por razón de que la conducta observada contraviene las normas y principios básicos de ética que rigen la profesión jurídica.

III

En resumen, parece claro que el cúmulo de actuaciones llevadas a cabo por los querellados no estuvo a la altura de la responsabilidad ética que imponen los Cánones 12, 18, 19, 35 y 38 del Código de Ética Profesional, ante. En esta clase de situaciones, recae exclusivamente sobre este Tribunal, en virtud de nuestro poder constitucional e inherente para reglamentar la profesión jurídica, velar por el fiel cumplimiento de los postulados del Código de Ética.[15] Si bien los tribunales de instancia poseen mecanismos para controlar y supervisar la conducta de los abogados que postulan ante sí, éstos no ostentan la facultad para disciplinarlos cuando violentan los Cánones de Ética. Tal facultad constituye prerrogativa exclusiva de este Tribunal. Siendo la conducta aquí exhibida una en abierta violación a los Cánones de Ética se impone que, en esta ocasión, ejerzamos nuestro poder disciplinario. Ello considerando que conducta de tal índole nos ha llevado, en el pasado, a ejercer el mismo.

Actuar de otro modo, tendría el efecto de transmitirle a la clase togada el peligroso mensaje de que, ante conducta como la aquí exhibida, este Tribunal permanecerá cruzado de brazos y no ejercerá su función disciplinaria. Ello resulta, en nuestro criterio,

---

[15] Véase K-Mart Corp. v Walgreens of P.R., Inc., ante, a las págs. 637-38; In re Díaz Alonso, Jr., ante, a la pág. 760.

impermisible. Debemos recordar lo que bien expresamos en una ocasión anterior, a los efectos de que, "[n]o podemos pasar por alto los postulados que emanan de los Cánones de Ética Profesional, pues se debilita y amedrenta la confianza depositada en la profesión legal."[16]

IV

Sólo nos resta determinar la sanción a imponerse en el presente caso a los abogados querellados. Somos del criterio que la conducta observada por los abogados Collazo Maldonado y Rivera Cabrera amerita la imposición de una suspensión del ejercicio de la abogacía, y de la notaría, al primero, por un período de treinta (30) días y al segundo, por un período de cuarenta y cinco (45) días; términos que comenzarán a contarse a partir de la notificación de la presente Opinión y Sentencia a dichos abogados. Le imponemos a éstos el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados, e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Deberán, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes, notificando también al Procurador General.

---

[16] *In re* Bonilla Rodríguez, res. el 17 de julio de 2001, 2001 TSPR 110 (énfasis nuestro).

El Alguacil de este Tribunal procederá de inmediato a incautarse de la obra notarial y sello notarial de Héctor Collazo Maldonado y Nelson Rivera Cabrera, debiendo entregar las mismas a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LOPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*: Héctor Collazo Maldonado
y Nelson Rivera Cabrera

CP-1998-9

SENTENCIA

San Juan, Puerto Rico, a 3 de abril de 2003

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia decretando la suspensión del ejercicio de la abogacía, y de la notaría, de Héctor Collazo Maldonado y Nelson Rivera Cabrera, al primero, por un período de treinta (30) días y al segundo, por un período de cuarenta y cinco (45) días; términos que comenzarán a contarse a partir de la notificación de la presente Opinión y Sentencia a dichos abogados. Le imponemos a éstos el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados, e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Deberán, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes, notificando también al Procurador General.

El Alguacil de este Tribunal procederá de inmediato a incautarse de las obras y sellos notariales de Héctor Collazo Maldonado y Nelson Rivera Cabrera, debiendo entregar las mismas a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón emitió Opinión disidente a la cual se une el Juez Presidente señor Andréu García. El Juez Asociado señor Fuster Berlingeri no intervino.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo

CP-1998-9

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:* Héctor Collazo Maldonado
y Nelson Rivera Cabrera

CP-1998-9

Opinión Disidente emitida por la Jueza Asociada señora Naveira de Rodón a la cual se une el Juez Presidente señor Andréu García.

San Juan, Puerto Rico a 3 de abril de 2003

El Procurador General expresó una "preocupación por la proliferación de comparecencias de jueces tanto ante el Tribunal Supremo como ante su oficina denunciando irregularidades en torno a la conducta de los abogados que postulan ante ellos sin que éstos, previamente y a tenor con su poder inherente de reglamentar los procedimientos, tomen oportunamente las medidas necesarias para hacer valer dicha prerrogativa."[17]

_____

[17] Informe del Procurador General en <u>In re William Mariani Román</u>, AB-2000-137. En este caso, mediante Resolución de 9 de febrero de 2001, expresamos lo siguiente:

Visto el Informe del Procurador General y la contestación del abogado, se ordena el archivo de este asunto. Aunque el Lcdo. William Marini Román debió ser más diligente en el trámite del caso que origina la queja, el Tribunal de Primera Instancia, Sala Superior de Utuado, Hon. Víctor de Jesús Cubano, debió haber tomado

(Continúa . . .)

CP-1998-9

Compartimos la misma y, por ende, entendemos que en este caso el Tribunal no debió ejercer su jurisdicción disciplinaria sobre la conducta procesal negligente reflejada en los autos del foro de instancia en el caso civil que originó la queja. Por esta razón disentimos de la opinión que hoy emite el Tribunal.

El caso de autos ejemplifica el tipo de conducta que debe ser atendida por los jueces de instancia al ejercer el control de su sala y del caso que tienen ante su consideración. Veamos cuáles son los hechos que dieron lugar a que la jueza de instancia nos remitiera el expediente del caso para iniciar un trámite disciplinario.

La conducta que da lugar a esta investigación disciplinaria surge de los procedimientos llevados a cabo en el caso Natividad Colón Salgado y otros v. Hospital Hermanos Meléndez y otros, Civil Núm. DDP-93-0707(502), en el Tribunal de Primera Instancia, Sala Superior de Bayamón, ante la Honorable Georgina Candal. Éste era un caso de daños y perjuicios por impericia médica.

En la querella presentada por el Procurador General se le imputaron a los Lcdos. Héctor Collazo Maldonado y

---

las medidas cautelares correspondientes para hacer valer sus órdenes. Se le apercibe al Lcdo. William Marini Román que en el futuro deberá cumplir estrictamente con las órdenes de los tribunales a riesgo de severas sanciones disciplinarias.

CP-1998-9

Nelson Rivera Cabrera violación a los Cánones 12, 18, 35 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX.[18]

El 4 de febrero de 2000 el Comisionado Especial, el Ex Juez Enrique Rivera Santana, rindió su informe. De las determinaciones de hecho surge que el licenciado Collazo Maldonado acordó con el licenciado Rivera Cabrera, a quien conocía y creía podía dar adecuada atención al caso, que este último se uniera al mismo. Sobre dicha solicitud no medió acuerdo entre la parte demandante y el licenciado Rivera Cabrera. Una vez se unió al caso, el licenciado Collazo Maldonado le entregó el expediente y el licenciado Rivera Cabrera asumió control del mismo, aunque al licenciado Collazo Maldonado se le notificaron varias órdenes.

---

[18] Cargo I: "violentaron los principios establecidos por el Canon 12 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a ser conciso y exacto en el trámite y presentación de las causas de ser [sic] cliente y a evitar indebidas dilaciones en su tramitación y solución".

Cargo II: "violentaron los principios establecidos por el Canon 18 de Ética Profesional el cual prohíbe a todo abogado a [sic] asumir una representación legal de un cliente cuando este [sic] consciente de que no puede rendir una labor idónea competente".

Cargo III: "violentaron los principios establecidos por el Canon 35 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a ser sincero y honrado en el desempeño profesional y a utilizar medios conscientes con la verdad".

Cargo IV: "violentaron los principios establecidos por el Canon 38 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado que en su conducta como funcionarios del tribunal aporten a la consecución de una mejor administración de la justicia".

CP-1998-9

Como bien señala la mayoría, gran parte de los problemas del caso surgen en el ámbito procesal y mayormente con lo relacionado a la obtención de un perito por parte de los demandantes. Veamos cuál, en lo pertinente, fue la cronología procesal de este caso.

1- El 14 de octubre de 1994 el licenciado Rivera Cabrera le informó al foro de instancia que había contratado un perito para el caso y que sometería el informe pericial en tres (3) semanas.

2- El 17 de noviembre de 1994 le informó al tribunal que había contratado a la firma J.D.M.D. de Atlanta, una firma que se dedica a ofrecer servicios de peritaje en casos de impericia médica. Esta firma garantiza el que en caso de que el perito que consigan no pueda comparecer o rendir un informe, la firma se obliga a gestionar otro perito que sustente la misma opinión que el anterior. El licenciado Collazo Maldonado no participó en la contratación de esta firma. El acuerdo se realizó entre J.D.M.D. y el licenciado Rivera Cabrera y los pagos se hacían directamente a la firma, no al perito contratado por ésta, el Dr. Herbert V. Swindell.

3- El 15 de enero de 1995 el tribunal emitió una orden, disponiendo que debido a la tardanza no admitiría el informe pericial en evidencia. El licenciado Rivera Cabrera solicitó la reconsideración y el tribunal reconsideró previó el pago de una sanción de $500 impuesta al abogado. Para esta fecha ya se le había impuesto otra sanción al licenciado Rivera Cabrera de $100 por no haber contestado a tiempo unos interrogatorios. En esta etapa de los procedimientos ya la Honorable Jueza Candal comenzó a advertirle al licenciado Rivera Cabrera de la posibilidad de elevar el caso ante el Tribunal Supremo si no depositaba la totalidad de las sanciones en diez (10) días.

4- El 4 de abril de 1995 se presentó un informe pericial preliminar que no estaba unido al expediente cuando la Jueza emitió la antes mencionada orden.

5- El 5 de mayo de 1995 se señaló una conferencia con antelación al juicio que no se pudo llevar a cabo. El tribunal entendió que esto se debió al licenciado Rivera Cabrera por lo que le impuso una sanción adicional de $200. En la minuta se hizo constar que la Jueza Candal había expresado que estaba preparando una resolución sobre el licenciado Rivera Cabrera para someterla al Tribunal Supremo por negarse éste a ofrecer la dirección de su representada. Ese mismo día dicho abogado ofreció la dirección de la codemandada Natividad Colón Salgado y el tribunal ordenó que le notificaran a ésta directamente varias órdenes.

6- El 1 de agosto de 1995, luego de varios trámites, el tribunal dispuso que si no se presentaba el informe pericial se desestimaría la demanda.

7- El 10 de agosto de 1995 se celebró una conferencia con antelación al juicio y, entre otras cosas, se indicó que aún no se había terminado el descubrimiento de prueba y que estaba programada la toma de una deposición al Dr. Swindell, el perito anunciado por la parte demandante. Ambos abogados de la parte demandante, los licenciados Rivera Cabrera y Collazo Maldonado, estuvieron presentes. En la vista que se celebró ese día la Jueza Candal hizo un recuento de todas las órdenes incumplidas por el licenciado Rivera Cabrera, señaló fecha para la discusión de una moción de desestimación y de sentencia sumaria y advirtió que para esa fecha debería estar lista la transcripción de la deposición que se le tomara al Dr. Swindell. Por último, autorizó que las sanciones fueran pagadas en plazos de $200 mensuales.

8- Del expediente no surge lo que ocurrió procesalmente en este caso en el 1996, si algo.

9- En el 1997 hubo una conferencia con antelación al juicio a la cual no comparecieron los abogados de la parte demandante. Se indicó que éstos tampoco habían presentado el informe pericial. La Jueza Candal emitió una orden para que la parte demandante mostrara causa por la cual no debía desestimarse la acción. Advirtió

además que para la toma de deposición que estaba programada para el 22 de marzo de 1997, debían tener disponible al perito y que de no cumplir les impondría una sanción de $1,000.00.

10- Del informe del Comisionado Especial surge que ya desde abril del 1995 el licenciado Rivera Cabrera sabía que el Dr. Swindell no podría comparecer ni a la toma de deposición ni al juicio. Mediante comunicaciones escritas de 13 de marzo y 10 de agosto de 1995 el Dr. Swindell le había notificado que no podía comparecer ni a la toma de deposición ni al juicio. Esto implicaba que J.D.M.D. tenía que buscar otro perito para el caso y esto significaba costos adicionales para obtener el peritaje. Ni el licenciado Collazo Maldonado, ni los abogados de la parte demandada, ni el tribunal de instancia, fueron informados de esta situación. Como consecuencia de esto y de los incumplimientos del licenciado Rivera Cabrera, y de las sanciones que le impusieron, el licenciado Collazo Maldonado le solicitó la renuncia. A pesar de que el licenciado Collazo Maldonado le informó a uno de los abogados de los demandados de los problemas confrontados con la obtención de un perito, no presentó escrito alguno haciéndole llegar esta información al tribunal. Fue uno de los codemandados el que le informó al tribunal.

11- Finalmente los licenciados Collazo Maldonado y Rivera Cabrera renunciaron a la representación legal de la parte demandante. Al 28 de diciembre de 1999 las sanciones impuestas no habían sido satisfechas. El tribunal decidió elevar el expediente al Tribunal Supremo para que se investigara la conducta profesional de ambos abogados.

Una vez sometido el informe del Comisionado Especial le concedimos término a los letrados querellados para que se expresaran. Éstos optaron por no comparecer. Cabe señalar que el licenciado Rivera Cabrera no contestó la

querella ni compareció en los procedimientos ante el Comisionado Especial.

Primero, quisiéramos comenzar por reconocer la dificultad que en muchas ocasiones confrontan los abogados de la parte demandante en casos de reclamaciones de daños por impericia médica en obtener peritos para probar sus casos. Esto, sin embargo, no excusa la falta de diligencia ni su deber de informarle, prontamente, tanto al tribunal, como a los demandados y a sus clientes, de los problemas que confrontan en obtener dicho peritaje. Los problemas procesales que emanan de estas situaciones deben ser resueltos por el foro de instancia que cuenta con múltiples mecanismos para lograr que los casos se resuelvan de forma justa, rápida y económica a tenor con lo dispuesto en la Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap.III.

Contrario a la mayoría, estimamos que la falta de pago de sanciones impuestas por el tribunal a un abogado, tanto a favor de una parte como a favor del Estado, tampoco constituye una razón para elevar el expediente ante el Tribunal Supremo para el inicio de un proceso disciplinario y la eventual imposición de medidas disciplinarias. Tanto el Estado como las partes cuentan con mecanismos procesales adecuados para hacer cumplir

CP-1998-9

estas órdenes, el trámite disciplinario no es la medida apropiada.[19]

Entendemos que el procedimiento disciplinario no debe utilizarse como sanción para un abogado que no ha sido puntual en su asistencia, ni conciso ni exacto en el trámite y presentación de las causas. Tampoco debe utilizarse contra el abogado que no ha podido producir un perito. En el caso de autos, no nos cabe duda que el licenciado Rivera Cabrera **no** fue diligente en la tramitación del caso y que incurrió en una falla procesal al no informarle, tanto al tribunal como a las partes, que no podría someter el informe pericial ni producir el perito para que fuera depuesto causando así una dilación injustificada en el trámite procesal. Estas actuaciones, sin embargo, deben atenderse dentro del trámite procesal del caso por el foro de instancia. Cabe señalar, que tan pronto se enteró el tribunal de instancia, éste tomó las medidas pertinentes e hizo innecesaria la utilización del proceso disciplinario **por dicho tribunal**. Las faltas atribuidas al licenciado Collazo Maldonado son mucho menores y definitivamente no ameritan proceso disciplinario alguno.

Por las razones antes expuestas disentimos de la opinión que hoy emite la mayoría. Entendemos que, a

---

[19] Aunque no es obligación de éste, al ser, como regla general, nuestro Derecho uno de carácter rogado, el tribunal puede también, motu proprio, hacer cumplir el pago de las sanciones, utilizando, por ejemplo, los mecanismos de desacato.

pesar de que las actuaciones del licenciado Rivera Cabrera denotan una gran falta de diligencia y una actitud algo displicente, contrario a la mayoría del Tribunal, entendemos que éste no es el tipo de caso en el que debemos ejercer nuestra jurisdicción disciplinaria.[20] El foro de instancia actuó enérgicamente y de forma adecuada con la conducta desplegada por el licenciado Rivera Cabrera. En cuanto a la conducta antiética que se le imputa al licenciado Collazo Maldonado, reiteramos que somos de la opinión que ésta no amerita proceso disciplinario alguno.

Por último, cabe señalar que el cliente de los licenciados Rivera Cabrera y Collazo Maldonado no presentó queja alguna en contra de éstos.

Miriam Naveira de Rodón
Jueza Asociada

---

[20] Tomamos conocimiento de que en los recursos que se presentan ante nosotros un número sustancial de estos reflejan conducta similar a la incurrida por los licenciados Rivera Cabrera y Collazo Maldonado, sin embargo, no ordenamos, motu proprio, la investigación disciplinaria de las mismas. Tampoco hacemos observación disciplinaria alguna. Cabe señalar que denegamos un número considerable de recursos por falta de jurisdicción por haber incumplido el abogado del peticionario con los términos jurisdiccionales prescritos por ley o por no haber perfeccionado el recurso adecuadamente a tiempo, o por incumplimiento craso con nuestro reglamento o el del Tribunal de Circuito de Apelaciones. A pesar de esto no iniciamos trámite disciplinario alguno ni censuramos o amonestamos a estos abogados. Entendemos que por el solo hecho de que un juez de instancia nos haya remitido el expediente de un caso para trámite disciplinario, no lo hace más importante ni adecuado que los casos que vienen ante nuestra atención en el curso apelativo normal y que reflejan igual tipo de conducta.